## KENNEDY *v.* I., C. & L. R. Co.—*In re* Petition of FRANK CORK, Administrator.*

*(Circuit Court, S. D. Ohio. July, 1880.)*

1. RECEIVERS—SUITS AGAINST.—Property in the hands of a receiver is *in custodia legis*. His possession is the possession of the court appointing him. No suit can be brought against him to disturb his possession, or to charge him with liability for an act done in the performance of his duties as such receiver, without the consent of such court. Any one instituting such a suit without leave may be enjoined or attached for contempt. The proper proceeding is to apply to the court appointing the receiver by petition, setting forth therein the grounds of complaint. Thereupon the court will direct a trial by a jury, reference to a master, or such other mode of proceeding as, in its discretion, it may deem best.

2. SAME—SAME—CONSTITUTIONAL RIGHT OF TRIAL BY JURY.—The right of trial by jury in such a proceeding against a receiver, on a common-law cause of action, is not an absolute right, but the granting or withholding thereof lies within the sound discretion of the court. Such a proceeding is not a "suit at law" within the provision of the constitution guarantying the right of trial by jury.

3. RAILROADS — SUIT AGAINST RECEIVER — TRIAL BY JURY. — Upon application of bond holders of the Indianapolis, Cincinnati & La Fayette Railroad, in a suit to foreclose their security, a receiver was appointed to operate the road. During such operation a train ran over a Mrs. Cork. A petition was filed in the foreclosure proceeding by her husband, as administrator, to recover damages for her death. *Held*, that petitioner was not entitled to a trial by jury.

Upon motion for a trial by jury. The facts sufficiently appear in the opinion.

*D. Thew Wright*, for Cork, petitioner.

*Hoadly, Johnson & Colston*, for receiver.

BAXTER, C. J.   The defendant, a railroad corporation, issued a large number of bonds, and executed a mortgage on its road, franchise, and property, to secure their payment; and, having failed to pay the interest as it accrued, a bill was filed in this court to foreclose the security. On complainant's application a receiver was appointed to preserve and operate the prop-

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati Bar.

erty *pendente lite.* One of his trains ran over and killed a Mrs. Cork, whose husband, after administering on her estate, sued therefor in a state court; but, at the instance of the receiver, he was ordered to dismiss his suit, with leave to be heard in this court. He thereupon filed his petition here, set forth his cause of action, and demanded a trial thereof by a jury.

These questions have been definitely settled by repeated adjudications. A receiver represents the court. There can be no interference with money or property in possession of a receiver without the permission of the court appointing him. Jones on Railroad Securities, §§ 502–3; Story's Eq. § 831. The power to appoint receivers is of great utility. *Ship* v. *Harwood,* 3 Atk. 564. A receiver is an officer of the court appointing him, and is entitled to its protection. He can do nothing except as he is authorized by the court; and when in possession of money or property, under the orders of the court, it is a contempt of the court to disturb his possession. No suit can be prosecuted against a receiver in any other forum without leave of the court under whose order he is acting, as the latter will not allow itself to be made a suitor in any other tribunal. Story's Eq. § 833. Such a practice would lead to inextricable confusion, and subject the fund in the custody of the court to the judgments and decrees of other and different courts.

But an injured party is not without a remedy. He may apply to the court having the custody of the property or fund for appropriate relief; and upon such application he will be permitted to go before a master or sue in a court of law. Story's Eq. §§ 831–833.

A court appointing a receiver, although not compelled to assume jurisdiction of all controversies to which the receiver may become a party, but is at liberty to leave their determination to any court of appropriate jurisdiction, may, nevertheless, assert its right to take all such controversies to itself. Its power is unlimited for purposes of protection, and it may restrain the prosecution of suits against the receiver in other courts, and punish, as for contempt, any interference with its

officers by force or by suit.    Jones on Railroad Securities, §
503.

The court will not permit any person to interfere either
with money or property in the hands of its receiver without
leave, whether it is done by consent or submission of the
receiver, or by compulsory process against him.    All moneys
coming into the hands of a receiver by the order of the court
are moneys belonging to the court, and the receiver is bound
to distribute in obedience to the orders and directions of the
court.    Kerr on Receivers, 168.

The receiver's possession being the possession of the court
from which he derives his appointment, he is not subject to
the process of garnishment as to the funds in his hands, or
subject to his control, and such process will be regarded as a
nullity.    The court, being in the actual custody of the prop-
erty or fund, will not yield its jurisdiction to another court
and permit the right of property to be there tried.    It will
not permit itself to become a suitor in another forum concern-
ing the property in question.    If a receiver's liability to be
sued in another court was recognized it would defeat the very
ends for which he was appointed, since a judgment in an-
other court, upon the garnishment, would, if recognized and
sustained, divest the jurisdiction having custody of the fund.
High on Receivers, 151.

In *Wiswall* v. *Sampson*, 14 How. 65, the supreme court of
the United States say : "When a receiver has been appointed
his possession is that of the court, and any attempt to dis-
turb it, without the leave of the court first obtained, will be a
contempt on the part of the person making it.    When, there-
fore, a party is prejudiced by having a receiver put in his
way, the course has either been to give him leave to bring an
ejectment, or other appropriate action, or permit him to be
examined *pro interesse suo;* and the doctrine that a receiver
is not to be disturbed extends to cases in which he has been
appointed without prejudice to the rights of persons having
prior legal or equitable interests.    The individuals having
such prior interests must, if they desire to avail themselves
of them, apply for leave to sue or to be examined *pro inter-*

*esse suo;* and this, though their right to the possession is clear."

And in the case of *Davis* v. *Gray,* 16 Wall. 203–218, Justice Swayne says: "A receiver is not appointed for the benefit of either of the parties, but of all concerned. Money or property in his hands is *in custodia legis.* He has only such power and authority as are given him by the court, and must not exceed the prescribed limits. The court will not allow him to be tried touching the property in his charge, nor for any malfeasance as to the parties, or others, without its consent; nor will it permit his possession to be disturbed by force, nor violence to be offered to his person while in the discharge of his official duties. In such cases the court will vindicate its authority, and, if need be, will punish the offender by fine and imprisonment for contempt. Where property in the hands of a receiver is claimed by another, the right may be tried by proper issues at law, by reference to a master, or otherwise, as the court in its discretion may see fit to direct."

Such has been the uniform holding of the courts until recently, since which modifications of the rule have been attempted by a few exceptional adjudications, and by legislative enactments in some of the states. A statute of the kind exists in Ohio. But this statute cannot control the action of this court. Jones on Railroad Securities, § 503; 7 Cent. Law Jour. 146; and *Thompson* v. *Scott,* 4 Dillon, 508. Nor can we yield to the modification of the rule adopted by some of the state courts. These decisions have been ably reviewed by *Love,* J., in the case of *Thompson* v. *Scott,* and his refutation of them maintained by a cogency of reasoning that ought, we think, to forever foreclose all further discussion of the question. Mr. High, who advocates (in an article published in the *Southern Law Review*) the new doctrine, admits that "the weight of authority is adverse to the exercise of any right of action against a receiver by any court other than that from which he derives his appointment, and to which he is amenable."

No other theory than that insisted on by us could be prac-

tically maintained, as the facts of this case will sufficiently demonstrate. The defendant is the owner of an important line of railroad. Upon application duly made, this court, in the exercise of its unquestioned jurisdiction, seized the property and put it into the hands of a receiver, to be held, preserved, and operated for the benefit of the parties entitled, until the rights of the parties could be judicially ascertained and declared, and a sale of the property effected. We must presume that everybody dealing with the receiver knew the character in which he was acting; that he was the representative of the court, and acting under his orders, and that if any damages were inflicted by reason of any breach of contract, or wrongful or negligent act of the receiver, or of his employes, this court was competent to award pecuniary reparation. It has the custody of the fund from which compensation is to be made, and why may the court not determine the matter by a proper issue at law, "by reference to a master, or otherwise, as the court in its discretion may see fit to direct?" This practice, besides having the sanction of the supreme court of the United States, affords a cheap, simple, expeditious, and effective remedy. This court having the custody of the fund out of which the petitioner's demand, in case he succeeds, is to be satisfied, can order and enforce payment therefrom of any sum that may be found due him. Whereas, if the petitioner is permitted to prosecute his suit in the state court to judgment, and recovers, that court could not, by any process recognized by law, compel satisfaction. But the petitioner would, in order to obtain satisfaction, have to bring his judgment into this court and ask for its payment, when it would become the duty of this court to look into the merits of his claim and satisfy itself of its validity before making an order to pay it. This it can do as well before as after judgment in another court. The judgment in another court, recovered on a suit prosecuted without leave, against a receiver, would, as we have seen, be a nullity. It could not be enforced against the receiver personally, nor reach and subject the funds in the custody of this court in any other way than through an order made here. Being a nullity, and

without legal force, why sue for and recover it? The doc-
trine contended for by the petitioner "contravenes," says
Judge Love, "the whole scheme of equity jurisdiction in the
matter of appointing receivers, and in the taking of posses-
sion through them of the property in litigation." The prop-
erty in the hands of a receiver is "a fund subject to the
disposition of the court, and under its exclusive control. The
principle that the court, which has actual possession of the
fund, has the exclusive right to determine all claims and
liens asserted against it, is fundamental. Hence, every court
of equity in such a case assumes to decide all controversies
touching the subject-matter of the suit and the fund; to
determine the existence and priority of all liens; to adjust
and settle all disputed claims, marshal the assets, and,
finally, to distribute the surplus among those who are entitled
to it."

"The ground and reason of this jurisdiction is the inade-
quacy of legal remedies." But if petitioner's theory of the
law is maintained—"if a party can, without leave, assert his
right against a receiver in another court, and in this way
withdraw controversies in regard to the trust fund from the
court having the custody of it—the fund would be disposed of,
not by the court having it in charge, but by another or other
tribunals." And "before the court appointing the receiver
could make a final disposition of the rights of the parties
before it," says Judge Love, "other courts might render judg-
ment against the receiver to an amount sufficient to absorb
the whole fund or property, and the litigation would prove
barren of results to the parties in the cause." If a party has
the right, without leave, to sue a receiver in another court
than that of his appointment, it follows that he can select his
tribunal. He could, therefore, in proper cases, sue as well
before a justice of the peace as in a court of record, and thus
subordinate the court of equity to the judgments of justices
of the peace. Different parties might sue in as many differ-
ent courts. These different tribunals, in possession only of
parts of the case, and called on to act in the absence of the
parties to the original suit, would have to give judgments in

ignorance of the equities of the whole case. Their judgments, under such circumstances, might, and probably would, be inconsistent and conflicting. One court might order one thing, and another court another contrary and different thing. An attempt to enforce these conflicting judgments would result in a conflict of judicial authority. The pendency of outside litigation, seeking to subject the trust fund in the hands of the receiver, would necessarily occasion delay. No final disposition of the original cause could be safely made until the litigation pending in other courts against the receiver was determined. The average life of a contested law suit in the courts of Ohio, I understand, is about five years. Before one suit could be determined another would most likely be instituted, and thus the court which first obtained jurisdiction would be ousted of its control of the trust fund, and rendered impotent to adjust the equities of the case, close the receiver's accounts, and terminate the litigation. We cannot sanction a doctrine fraught with so many inconveniences and complications.

It follows, from what we have already said, that the second position is as untenable as the first. The petitioner claims that a trial by jury is guarantied to him by the constitution. This instrument provides that "in all suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved." The amount in controversy in this case is more than $20, and, if the petitioner's case is "a suit at law," his demand for a trial by jury must be conceded. But it is not a suit at law. The original cause in which he intervenes is of equitable cognizance, and could not have been maintained in a court of law. It is, then, a chancery cause, pending in, and to be determined by, a chancery court. The constitutional guaranty securing trial by jury does not in terms extend to chancery courts. It has not been so understood or interpreted. On the contrary, courts of chancery are, and always have been, invested with the prerogative of deciding the facts as well as the law of cases pending before them. Their right, generally, to do this has not been denied by the counsel in this case. But it is said,

*arguendo*, that this case is an exception to the general rule because the wrong complained of is a tort, for which, apart from the other considerations to be hereafter adverted to, an action at law is the only remedy; and if the case was prosecuted in a law court the right to trial by jury would exist. Certainly an action at law could have been maintained for the alleged wrong if there was any one capable of being sued. But the receiver is not personally liable, and this court cannot be sued without its consent, and this consent it declines to give.

There is, therefore, no one suable at law, and there is, consequently, no such suit. The petitioner is compelled to seek redress here or forego all relief. And coming here he will be required to pursue his remedy according to the practice prevailing in this court. Under this practice, as herein previously stated, the court may decide the facts as well as the law, and the right to do this extends to all questions coming legitimately before it. This right is not confined to questions arising upon the original pleading, nor to questions of equitable cognizance. When the jurisdiction has once attached, the court will grant full relief, although the questions presented are not ordinarily within the scope of chancery jurisdiction, (Bispham's Principles of Eq. § 565;) and where chancery once entertains a suit upon grounds legitimately cognizable in that court, it will proceed to adjudicate other matters, of which it has only incidental cognizance, in order to avoid a multiplicity of suits. *Doggett* v. *Hart,* 5 Fla. 215; *Haggins* v. *Peck,* 10 B. Monroe, 210.

The principle is a familiar one. Cases exemplifying the propriety and the necessity of the rule are of frequent occurrence. An action of ejectment, unmixed with any equitable considerations, is an action at law; and, if brought in a court of law, the parties, under the constitution, have the right of trial by jury. But if there is some element of equity in the case, such as a cloud on the title, the party owning the superior title may file a bill in chancery to remove the cloud, and the court, having thus acquired jurisdiction, is authorized to inquire, by its own methods, into and pass upon the title—

a question purely legal—remove the cloud, and proceed and administer full relief by ejecting the party wrongfully in possession, and putting the adverse party therein.   So the remedy to collect a promissory note is at law, and if thus sued the parties would be entitled to a trial by jury.   But if it is secured, either by pledge or mortgage, and a bill is filed to subject the security, a court of chancery would have jurisdiction; and, being thus invested with equitable jurisdiction, it could decide any issue, legal or equitable, made in the case, ascertain the sum due, and enforce its finding by an appropriate decree.   The same principle is applicable to a creditor's bill filed to marshal assets, and distribute the estate of a decedent, or insolvent corporation.   The debts may be evidenced by obligations on which suits at law could only be maintained.   But a court of chancery, obtaining jurisdiction to marshal assets, is authorized to ascertain how many debts are due, to whom owing, and the amount of each, as incident to its equity jurisdiction to marshal the assets, etc.   These examples are *apropos* to illustrate the case in hand.

The bill to foreclose the mortgage in this case gave the court jurisdiction over the whole subject-matter of the litigation, and conferred upon it authority to hear and determine *all* collateral issues that might be involved in the controversy. The court had power to appoint a receiver, and to order him to operate the road; to employ operatives and fix their wages; contract for the carrying of freight and passengers; to order payments for injury due to freight; compensate shippers for damages sustained on account of non-delivery of goods, and make reparation to persons for injuries inflicted by the negligent or wrongful action of its servants; and the court could, in its discretion, in order to a just discharge of its duties, call in a jury, invoke the assistance of a master, or take such other steps for a judicial ascertainment of the facts as it might regard most appropriate in the particular case.   Its right to proceed in this way has been recognized and followed for an indefinite period.   It *may*, but is not *compelled*, to call a jury. Whether it will or will not send the issues to a jury is a matter resting in the judicial discretion of the court.   A court

could not well operate a railroad through a receiver in any other way. The remedy is cheap, speedy, effective, and just. It may, however, be abused—so may any other judicial power —but the protection against abuse, in laws of this kind, is not to be found in an appeal to a jury, but in an appeal to the court of last resort. This remedy is open to the petitioner. If injustice shall be done him here the error will be corrected by the supreme court. The intervention of a jury is not deemed necessary in this case, and the petitioner's motion for one will be denied.