EDWARD S. STOKES, as Receiver of the HOFFMAN HOUSE, Respondent, v. HOFFMAN HOUSE OF NEW YORK, Appellant.

*Stokes* v. *Hoffman House*, 46 App. Div. 120, affirmed.
(Argued February 6, 1901; decided May 14, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 2, 1900, affirming a judgment in favor of plaintiff entered upon the report of a referee.

An action having been commenced by the Farmers' Loan and Trust Company, as trustee, against the Hoffman House, a New Jersey corporation, to foreclose a mortgage covering leases and chattels belonging to the defendant therein and which were in the possession of this defendant, and with and upon which it was carrying on a hotel and café business in the city of New York, on the 21st of December, 1893, an order was made appointing Edward S. Stokes receiver of the property covered by the mortgage, to foreclose which the action was brought.

The said Edward S. Stokes, as receiver, entered into possession of the property mentioned in said foreclosure action, and continued to conduct the business theretofore carried on upon and with said property until the 25th of May, 1894. On the 24th of January, 1894, a judgment of foreclosure and sale was entered appointing a referee to sell. It appears that there

were outstanding 425 bonds of $1,000 each, which were secured by the mortgage to foreclose which the action was brought; 300 of these bonds were in the possession and under the control of Edward S. Stokes; the other 125 bonds were in the possession of one William E. D. Stokes, claiming to hold them as collateral security for an indebtedness of said Edward S. Stokes, the latter, however, claiming that the said W. E. D. Stokes had converted them to his own use. On or about the 3rd of February, 1894, the present corporation was formed by said Edward S. Stokes, James D. Leary and E. V. Foote, pursuant to the statute of New York known as " The Business Corporations Law," with a capital of $200,000. On the 2d of March, 1894, that part of the mortgaged property known as the Hoffman House was duly sold by auction by the referee and purchased for the defendant herein . for the sum of $120,000. The terms of sale provided that the property was to be subject to all liens of every kind and description, and that unpaid rent, if any, would be allowed to the purchaser. Said terms of sale also provided that the purchaser, upon payment of the sum bid, was to receive the property free and clear from unpaid rent then due, or taxes, or counsel fees, or other expenses arising from the receivership. All such claims, if assumed by the purchaser, were to be deducted from the price the property brought. On the 12th of May, 1894, there was a meeting of the incorporators of the defendant at which by-laws were adopted. Edward S. Stokes was elected president; Mr. Foote, treasurer, and Mr. Cornish, secretary. Thereupon a resolution was adopted confirming the purchase made on March 2, 1894, at said foreclosure sale. Of the amount of the defendant's bid, $5,000 having been paid in cash, and said Edward S. Stokes having delivered to the defendant herein the 300 bonds controlled by him in order that they might be used in completing the purchase, and the state of the case with reference to the other 125 bonds having been reported to the court, on the 15th of May, 1894, an order was entered whereby the referee was directed to deliver to the purchaser of the mortgaged property sold by him as above mentioned, conveyances and transfers thereof upon receiving in cash the sum of $5,000 in addition

to the sum of $5,000 in cash theretofore paid to him, and also 300 of the bonds of the defendant to secure which the mortgage mentioned in the complaint in the action was given, and also a bond in the penal sum of $35,000, with sufficient surety conditioned to pay to said referee upon demand the cash value of the remaining mortgage bonds of said defendant corporation as soon as their value could be ascertained, and any further sum or sums which might be necessary to be paid under the decree in the action. On the 18th of May, 1894, a meeting of the directors of the New Hoffman House Corporation was held at which it was reported that arrangements had been made for the transfer of the property to the corporation on filing the bond directed by the court as aforesaid, and the officers of the corporation were authorized to issue the entire stock of the company, 2,000 shares, to Edward S. Stokes, save 5 shares issued to Mr. Foote and 5 shares issued to Mr. Leary. On the 25th of May, 1894, another meeting of the directors was held, at which a resolution was passed for the execution of the $35,000 bond, and this bond was accordingly executed. Thereafter and upon the same day a deed was delivered by the referee to the New York corporation of the Hoffman House property so purchased by it, and said corporation went into possession. After this date, however, and until the latter part of June, 1894, the receiver kept the accounts of the receipts and disbursements of the New Hoffman House Corporation in his own name and deposited the receipts in his own bank, drawing checks and making cash disbursements therefrom on behalf of the new corporation. On the 29th of June, 1894, said receiver, finding an apparent balance of $9,282.42 in his account, gave a check for the sum to the New Hoffman House Corporation and closed his receivership bank account, and thereafter all transactions were had through the bank account of the Hoffman House of New York.

During all the time that the said receiver was in possession of the leasehold property known as the Hoffman House he paid no rent to the owners of the leases, and no demand was made of him by the landlord for the possession of the property. The landlord insisted, however, that in the terms of

sale under which the said leases were to be sold in the fore-closure action he should be protected so that the purchaser at said foreclosure sale might be required to pay the rent which had accrued from the 1st of December, 1893. Accordingly the terms of sale were submitted to the landlord, and he was assured by Edward S. Stokes, one of the incorporators of the new corporation, the proposed purchaser, that the purchaser upon going into possession of the property would pay all the back rents. As soon as the Hoffman House Corporation went into possession the landlord made a demand for the payment of the rent, and threatened that unless a substantial payment was made on account thereof he would take proceedings to recover the possession of the leased property. Thereupon the said Stokes, as receiver, out of the moneys in his hands as receiver, wrongfully, as is claimed by the plaintiff, paid to the landlord the sum of $10,000 on account of rent; and sub-sequently the defendant paid all the balance of the rents, amounting to many thousands of dollars.

In January, 1898, after Edward S. Stokes had sold out his interest in the defendant corporation, he, as receiver, com-menced this action, claiming the right to recover various items, among which was the sum of $10,000 paid by him, as above stated, to the landlord for rents. The action was refer-red to a referee who has reported in favor of the plaintiff, and the judgment entered thereon has been affirmed by the Appellate Division.

*David McClure* and *John H. Rogan* for appellant.

*Charles E. Hughes* for respondent.

CULLEN, J. The foregoing statement of the case is taken from the opinion of the presiding justice of the Appellate Division and adopted by us. The principal questions argued on this appeal relate to the award made by the referee to the plaintiff of the sum of ten thousand dollars paid by the receiver to the landlord on account of the rent after the defendant entered into possession of the leasehold premises, and to the refusal of the referee to allow the defendant its counterclaim for some nineteen thousand dollars paid by

it on account of the rents accruing during the period of occupation by the receiver. The Appellate Division was unanimous in its approval of the disposition made by the referee of the defendant's counterclaim; but his ruling, that the plaintiff was entitled to recover the payment made by him on account of rent, was affirmed by a divided court. The judgment in the foreclosure action directed that the mortgaged property be sold "subject to all liens of every kind and description." The terms of sale under which the property was sold by the referee, after enumerating the various leases under which the property was held, stated, "unpaid rent, if any, will be allowed to the purchaser." An addendum contained the following provisions: "The purchaser upon payment of the sum bid, shall receive the property free and clear from unpaid rent now due, or taxes, or counsel fees, or other expenses arising from the receivership. All such claims, if assumed by the purchaser, shall be deducted from the price the property brings." It is claimed by the counsel for the respondent that the defendant, after the purchase at the foreclosure sale, assumed the payment of the back rents, and that this fact materially affects the rights of the parties in this litigation. We are of opinion that no agreement to assume such rents was established by the evidence, and our disposition of the case will proceed on that theory. But though the defendant did not personally assume the back rent, it necessarily took the leasehold premises subject to the burdens of such rent and under the hazard of being dispossessed by the landlord and losing the demised term in case the rent was not paid. It is clear that under the terms of the sale the purchaser was to receive the leaseholds free from any back rent, or to have the amount of the back rent allowed him out of the purchase money, which in effect was the same thing. If the purchase had been made by a third party, paying money for the property, the questions before us would be without practical importance, for in one or another way the purchaser would be entitled to reimbursement out of the funds realized by the foreclosure suit, whether by sale or receivership, for all unpaid rent accruing before the time of sale, and we do not say that the fact that the defendant purchased in bonds in any manner affects the rights of the

parties. But this consideration does not control the disposition of the case. This action is at law by the receiver to recover money paid by him for the defendant's account. The counterclaim is for money claimed to have been paid by defendant for the plaintiff's use on the debt for which he was primarily liable. We think that the decision of the action must proceed on the same lines as if the defendant had not purchased at the foreclosure sale, and must follow the determination of the question whether the plaintiff was legally liable for the rent accruing while he was in possession of the leasehold premises. When the defendant bought at the foreclosure sale it made no contract with the receiver, so that its right to indemnity for the accrued rent which it was compelled to pay, constituted no legal claim against him. Indeed, the purchaser made no contract with the referee. " The sale is made by the court. * * *· The purchaser could not sue the court and it could not sue him upon his contract. * * * By bidding he subjects himself to the jurisdiction of the court, and in effect becomes a party to the proceeding, and he may be compelled to complete his purchase by an order of the court and by its process for contempt, if necessary." (*Andrews* v. *O'Mahoney*, 112 N. Y. 567. See *Miller* v. *Collyer*, 36 Barb. 250.) A purchaser's remedy must, therefore, necessarily be by application in the action in which the sale was had, and as his claim could not be the subject of an affirmative suit on his part, so he is equally precluded from setting it up as a counterclaim in a suit brought against him.

To succeed in its appeal the defendant must, therefore, establish the proposition that the accruing rent constituted a legal liability against the receiver. We think that this is not the law. The plaintiff was a chancery or, as it is sometimes called, a common-law receiver, not a statutory one, who, as in case of the sequestration of an insolvent corporation, is in effect a mere assignee. In *Keeney* v. *Home Ins. Co.* (71 N. Y. 396) it was held, " A receiver *pendente lite* is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession as

the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties, as they may be determined by the judgment in the action. The appointment of the plaintiff as receiver, therefore, wrought no change in the title of the property." This statement of the rights and powers of chancery receivers and of the character of their possession and title, or rather lack of title, and the distinction between such receivers and statutory receivers, has been repeated by this court in *U. S. Trust Co.* v. *N. Y., W. S. & B. Ry. Co.* (101 N. Y. 483) and in *Decker* v. *Gardner* (124 N. Y. 334). It was applied in the case of the committee of a lunatic in *Matter of Otis* (101 N. Y. 580). It was there held that the committee did not by occupation of the premises become liable as assignee of the term. Judge ANDREWS, writing the opinion of the court, said: " But the committee of a lunatic takes no title to the real or personal estate of a lunatic. He is a mere bailiff to take charge of the property of the lunatic, and to administer it subject to the direction of the court. His possession is the possession of the court." This statement, *mutatis mutandis*, is exactly true of a chancery receiver. Originally neither the receiver nor the committee could sue in his own name, but this power was granted to both by the same statute. (Chap. 112, Laws of 1845.) In the *Otis* case Judge ANDREWS wrote: "It is well settled that a receiver, or an assignee in bankruptcy, or an assignee for the benefit of creditors, if he elects to accept a lease belonging to the debtor, or assignor, becomes by such election assignee of the lease and personally liable on the covenant to pay rent, of which liability he can only discharge himself by an assignment or surrender." It is plain, however, that in this reference is made only to statutory receivers, for the distinguished judge who wrote in the *Otis* case also wrote the opinions in the *Keeney* case and in the *U. S. Trust Co.* case, the latter being decided at the same term of court as the *Otis* case. This view of the effect of the appointment of a chancery receiver has been adopted by the Supreme Court of the United States. (*Davis* v. *Gray*, 16

Wall. 218; *Quincy, M. & P. R. R. Co.* v. *Humphreys*, 145 U. S. 82.) If it be true that a chancery receiver takes no title to a leasehold estate, but mere possession as an officer of the court, we do not see how any privity of estate can be created between him and the lessor by which he can become liable as assignee of the term upon the covenant to pay rent.

It is contended, however, that whatever be the force of the foregoing argument and whatever the true character of his possession, it is settled by the decided cases that a chancery receiver is liable for the payment of rent accruing during his occupation. Before considering the cases cited in support of this assertion, it is necessary that we should have in mind the clear distinction between the legal liability of the receiver, by virtue of his appointment as such and his possession under his appointment, and the equitable claim which a lessor may have for the application of the fund in court towards the satisfaction of the rent. The first, if it exists, is absolute. The second is qualified and may be destroyed by superior equities of other parties. It is apparent that the claim of the lessor for rent when solely an equitable one, must be established in the action in which a receiver is appointed; for in that form alone can parties having other equities be heard and the superiority of equity among conflicting claimants be determined. Statements concerning the liability of the receiver to pay rent when made in foreclosure suits are not necessarily to be interpreted as laying down a rule of legal liability, but rather as asserting the equitable rights of the lessor. Three cases in this court are relied on by the counsel for the appellant. The first is that of *Woodruff* v. *Erie Railway Co.* (93 N. Y. 609), in which it was held that a receiver must pay the rent of a leased railroad. It is to be first observed that the receiver in that case had been appointed such on a sequestration of the corporation as well as in the foreclosure suit. He was, therefore, a statutory receiver. But beyond this an examination of the record shows that in the first instance the plaintiff made his application in the foreclosure suit to compel the receiver to pay the rent. After consideration the court deemed it wiser that the plaintiff should proceed by suit rather than by summary application

71

and directed him to bring an action. The action brought in pursuance of this direction was not at law but in equity, and to it were made parties not only the receiver, but the plaintiff and defendants in the action in which the receiver had been appointed. It was, therefore, entirely practicable to determine in that action the equities of all parties. The next case is that of *Frank* v. *N. Y., L. E. & W. R. R. Co.* (122 N. Y. 197), in which were involved the same receivership and the same lease as in the preceding case. But the decision related to the liability of a corporation which had purchased on foreclosure and become assignee of the term. The third is that of *Wells* v. *Higgins* (132 N. Y. 459) in which a receiver of leasehold premises was held liable in an action at law for default during his occupation in a covenant to pay rent and taxes. The receiver in that case was a chancery receiver. There may be a question as to whether under the terms of the order appointing him he was directed to pay the rent. However this may be, the decision of this court seems to have proceeded on the ground that the title to the demised premises vested in the receiver. I am frank to say that very probably the point presented on this appeal was involved in the decision of that case. From an examination of the briefs of counsel, it appears that no question was made that a chancery receiver did not take title by his appointment and possession, but it was sought to relieve the defendant on the ground that he was appointed receiver only of the rents and profits, and not of the property itself. We think that case should not control us now.

Much stress is also laid upon the case of *United States Trust Co.* v. *Wabash W. Railway Co.* (150 U. S. 287). It is there said: "If he elect to adopt a lease, the receiver becomes vested with the title to the leasehold interest, and a privity of estate is thereby created between the lessor and the receiver, by which the latter becomes liable upon the covenant to pay rent." This statement was made on an application in the foreclosure suit in which the receiver was appointed. It may well be, therefore, that the court intended to assert only what would constitute an equitable claim of the lessor upon the funds in court. As a matter of fact the lessors were not allowed the rental of the whole period during which the receiver was in possession

of the leased railroad, but only for rent accruing subsequent to an order made by the court on an application of the lessors that the receiver either pay rent or surrender the road. If the right of the lessor to rent depended upon privity of estate between the receiver and the lessor, it is not entirely clear how this result was reached. That the case was really disposed of on equitable considerations appears from the conclusion of the opinion: " As bearing upon the general equities of the case, it may be remarked that, while the proceedings in the foreclosure of the Wabash mortgage did undoubtedly result in the detention of the road from its lawful owners for about fifteen months without the payment of the agreed rent, the road during this time earned nothing beyond its operating expenses, and there is nothing to indicate that it would have done so in the hands of its owners, so that in fact they lost nothing. Indeed, it is scarcely credible that they would have delayed so long to demand possession of the road if in their opinion it could have been operated at a profit."

We also agree with the learned court below that the terms of the order appointing the plaintiff receiver did not require him to pay the accrued rent. Nor can that payment be considered as having been made under the stress of necessity in order to save the mortgaged property. At the time of the payment the sale had been effected and the purchaser was in possession. Though it did not assume the rent in arrears, the defendant was required to pay such rent to save its lease from forfeiture. The act of the receiver was, therefore, an appropriation of a fund in court without the authority of the court, and must be considered to have been so appropriated for the defendant's benefit. It follows that the judgment was correct and should be affirmed.

We do not wish our decision to be misinterpreted. We have discussed the rights of the parties from a technical point of view regardless of the equitable claims of the defendant, simply because we deem that it would set a very bad precedent to attempt to adjust those equities in this action, in which all the facts determining such equities are not and cannot be before us. While we have held that no legal liability for the payment of rent was imposed upon the receiver, either by virtue

of his appointment and possession as such, or by the terms of the order appointing him, we have not decided that the lessors had not a most equitable claim to have all the net profits of the operation of the hotel, after the payment of its running expenses, applied to the payment of the rent of the premises, the use of which by the receiver produced the fund in court. In *Matter of Otis* Judge ANDREWS said : " If the leased premises are occupied by the committee, and such occupation is to the advantage of the estate, as where it was necessary in order to carry on or close up the business of the lunatic, the rent accruing during such occupation would justly be regarded as a reasonable expense incurred by the committee." Nor do we decide that the defendant did not, under the terms of the sale, by which it was to receive the property free and clear of unpaid rent, succeed to the equities of the lessor as well as acquire new equities of its own. The defendant has not been without remedy. During the pendency of this action it could have applied in the foreclosure suit for an order of the court ratifying the payment made by the receiver on account of the rent. If such a motion had been granted it would have disposed of that claim and no recovery for the amount could have been allowed. It is not too late for the defendant now, by application in the foreclosure suit, to have all its equities established and preserved. It may move the court for a ratification for the payment of rents made by the receiver and for a direction to its officer to reduce the judgment by that amount and interest. If the amount of the present recovery is to be ultimately restored to the defendant on account of the unpaid rent which it should have been allowed out of the purchase money, this judgment might be permitted to stand unenforced as settling the accounts between the receiver and the defendant, and to be credited as a payment on such restoration. All these matters, however, are questions which can be determined only in the foreclosure action, and upon which we do not pass.

The judgment appealed from should be affirmed, with costs, but without prejudice to a motion by defendant to stay its enforcement pending such application to be made in the action in which the receiver was appointed, as it may be advised.

HAIGHT, J. (dissenting). The order appointing Edward S.
Stokes as receiver of the Hoffman House authorized and
empowered him "to take possession of and carry on the
several hotels and restaurants, the leases of and chattels in
which are covered by the said mortgage * * * and with
authority to do any and all other things which may be neces-
sary or proper to be done in the general and ordinary conduct
of similar places of business." It is true that the payment
of the rent accruing during the occupancy of the receiver
upon the lease of the Hoffman House is not expressly directed
by the order, but we will not assume that a court of equity,
in making the order, intended to hold possession of the lease-
hold property and appropriate its entire earnings and thus
deprive the landlord of the rent that legally and equitably
belonged to him. The payment of such rent was proper and
was one of the things ordinarily done in the conduct of a hotel
business upon leased property, and to our minds was clearly
contemplated by the court making the order.

Again, considering the case independently of the order and
upon the assumption that it contained no provision authoriz-
ing the payment of the rent, the fact nevertheless exists that
the receiver did pay the sum of $10,000 to the landlord for
rent accruing during the time that the premises were occupied
by him as receiver, and the question now is, can he recover
this sum back from the defendant?

After paying the rent referred to, the receiver had on hand
upwards of $9,000. He must, therefore, have saved from the
operation of the property during his receivership upwards of
$19,000 over and above running expenses, not including the
rent. The rent of the premises during the receivership
exceeded in amount the $10,000 paid, and under the circum-
stances a court of equity would certainly have applied this
surplus upon the rent had it been asked so to do by the land-
lord or the receiver. Instead of asking the court for such an
order the receiver made the payment voluntarily without pro-
test, under no mistake of fact or law, and no creditor of the
corporation or other person has ever appeared to object to or
question the propriety of such payment. Under these cir-
cumstances no court, in the exercise of its equity powers,

could when requested properly refuse to confirm such payment. The payment was but right and proper; the rent belonged to the landlord and he was entitled to it; the defendant did not owe it and was under no obligation, either in law or equity, to pay it. Under the notice of sale the purchaser, upon payment of the sum bid, was to have the property free and clear from unpaid rent. He had the right to assume and pay the rent if he so elected and deduct the amount from the purchase price, but this was a privilege personal to the purchaser. He had the right to take the furniture and other personal property covered by the mortgage from the hotel building and use or dispose of it elsewhere. He could either surrender the leasehold property to the landlord or leave it in the hands of the receiver. It does not appear to us that a payment made under such circumstances can properly be held to be the wrongful appropriation of the moneys of the receivership.

It is contended that the payment of rent was made for the benefit of the defendant. We do not so understand the facts. As we have already seen, the defendant, as purchaser, was under no obligation to pay the back rent accrued, and if it did choose to pay such rent it had the right to deduct the amount so paid from the purchase price. If the rent was paid by the receiver then the purchaser could perform his part of the contract by paying over the purchase price to the officer of the court making the sale. So far as he was concerned, he had to pay the purchase price either to the referee or to the landlord, but in no event could he be called upon to pay more. The payment by the receiver merely relieved the defendant from paying that amount to the landlord, but he remained obligated to pay it to the referee. It is not, therefore, apparent how the defendant was benefited by such payment, or how it can be held to have been made for its benefit.

It is said that this is an action at law. Undoubtedly, but the plaintiff seeks to recover back money which he has voluntarily paid to the person entitled thereto under no mistake of fact or law, which payment a court of equity would have compelled had it been requested so to do. Our attention has been called to no authority which authorizes a recovery at law under such circumstances.

The defendant, doubtless, could have applied in the foreclosure suit for an order ratifying the payment made by the receiver on account of the rent during the pendency of this action. If such a motion had been granted it would have disposed of the claim. It may not be too late for the defendant now to move for a stay of execution upon this judgment, pending an application in the foreclosure suit, to have all of its equities established and preserved. A proper result may be reached by adopting that practice, but it would, doubtless, result in further litigation which might extend over years. The plaintiff has brought this action to recover, among other items, the $10,000 paid by him for rent. The issue raised thereon is now before us for determination. We have jurisdiction to now dispose of that controversy without remitting it to another tribunal, and, under the circumstances, it appears to be our duty to do so.

No other errors appear in the case which require consideration here.

The judgment should be modified by deducting the sum of $10,000, with interest thereon from the 26th day of January, 1898, from the amount of the recovery herein, and, as so modified, the judgment should be affirmed, with costs to the appellant.

PARKER, Ch. J., and WERNER, J., concur with CULLEN, J., and GRAY, J., concurs in result; O'BRIEN and LANDON, JJ., concur with HAIGHT, J.

Judgment affirmed.