### DURAND & CO. et al. v. HOWARD & CO, et al.

#### (Circuit Court of Appeals, Second Circuit. July 30, 1914.)

#### No. 298.

1. RECEIVERS (§ 110*)—SUITS AGAINST RECEIVERS—DISCRETION OF COURT TO PERMIT.

   It is generally a matter within the discretion of the court whether it will determine for itself claims of or against a receiver of its appointment or will allow them to be litigated elsewhere.

   [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 195–197; Dec. Dig. § 110.*]

2. LANDLORD AND TENANT (§ 112*)—FORFEITURE OF LEASE FOR DEFAULT IN RENT—WAIVER BY LANDLORD.

   Where, after the appointment of receivers for a corporation, the landlord of the premises in which it conducted its business came into court and procured an order requiring the receivers to elect by a certain date whether they would adopt or renounce the lease, pursuant to which they elected to adopt the lease, such action by the landlord was a recognition that the lease was still in force, and a waiver of the right to declare a forfeiture for prior defaults in payment of rent.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 343–349; Dec. Dig. § 112.*]

   Hand, District Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

---

The complainants, citizens and residents of the state of New Jersey, filed a bill in the District Court for the Southern District of New York against the defendant, a corporation organized and existing under the laws of the state of New York.

The bill alleged that the defendant was engaged in business in New York City and that its assets were largely in excess of $100,000; that it owed approximately $140,000 to more than 150 creditors; that it did not have sufficient money to meet its obligations as they fell due and was not able to borrow the money necessary for such purpose; that it was indebted to complainants in certain specified amounts; that unless a receiver was appointed certain creditors would obtain a preference over other creditors; and that the assets, consisting of jewelry and silver, would be sacrificed at half their value and great injury result to creditors. It therefore asked for the appointment of a receiver. The defendant filed an answer admitting the truth of the allegations contained in the bill and joined in the prayers thereof.

On January 6, 1914, the cause came on to be heard upon the bill and answer, and the court appointed Samuel Strasbourger and Nathaniel S. Corwin temporary receivers. The receivers were authorized to take possession of all the property, business, assets, and effects of the defendant, "and to run, manage, and operate the said property in such manner as will in their judgment produce most satisfactory results, and to preserve the same in proper condition, and to protect the title and possession and to secure and develop the business of the same." They were also authorized to pay the necessary expenses of operating the property. All persons were "enjoined and restrained from selling, transferring, disposing of, or in any manner interfering with any of the property of the defendant company, or from taking possession of or in any way interfering with any part thereof, or from in any manner obstructing or interfering with the possession or management of any part of the said property."

On January 30, 1914, the appointment of the receivers was made permanent, and all creditors were required to file their claims with the receivers on or before February 16, 1914, "or they may be excluded from the benefit of these proceedings."

On January 30, 1914, the landlords asked the court to fix a time within which the receivers should decide whether they would adopt or renounce the lease held by the defendants. On February 9, 1914, the receivers were required on the application of the landlord to elect on or before March 4, 1914, whether they would assume and adopt on behalf of the estate of the defendant the lease of the premises 624 Fifth avenue in the city of New York and dated January 18, 1911, between the executrix and executor of Henry S. Redmond, deceased, and Equitable Trust Company as trustee under the will, as lessors, and the defendant, as lessees, or whether they would renounce the same. And on March 3, 1914, the court, acting upon the recommendation of a committee appointed by the creditors and upon the facts as set forth by them, authorized the receivers "to affirm the lease," and an order was entered declaring that the receivers "be and they hereby are authorized to assume and adopt on behalf of the estate of the defendant and as such receivers the lease of the premises" describing them. And on March 4, 1914, the attorney for the receivers notified the attorneys for the landlord that they assumed and adopted the lease and that "the adoption of the lease is made pursuant to the request of the creditors' committee and upon the authority of the court in the above action upon application of the aforesaid creditors' committee."

The other material facts are stated in the opinion of the court.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham, of New York City, on the brief), for appellants.

Philip W. Russell, of New York City (Edmund L. Durkin, of New York City, on the brief), for receivers.

Before COXE and ROGERS, Circuit Judges, and HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). The question which this cause presents is as to the right of a landlord to proceed against chancery receivers for the forfeiture of a lease because of default made by the lessee in the payment of rent, which lease has been adopted by the receivers appointed over the estate of the lessee. After the receivers notified the landlords, on March 4, 1914, that upon the authority of the court they had adopted the lease, they received a communication, also dated March 4, 1914, which read as follows:

"On behalf of the lessors, we hereby return this notice on the ground that it is void and of no effect, and on the further ground that there is now due and unpaid the rent due from July 12, 1913, to January 6, 1914, with accrued interest, and that there is also due and unpaid the rent which accrued for the month of February, with interest from the 12th day of February, 1914 to date, and that there could be no such ratification nor adoption until said defaults are made good, on the further ground that even admitting that such notice, adoption, or assumption were valid, that then and in that event the said receivers are now in default under the terms of said lease."

On March 6, 1914, the landlords petitioned the court for an order directing the receivers to remove from and vacate the premises or pay the petitioners all past due rent, amounting to $8,694.37, with interest, and in the event of the failure to pay the same that the petitioners be authorized "to take such steps as may be proper, including proceedings instituted in the Municipal Court of the City of New York, or any other court, to compel said receivers to remove from, vacate, and give up said premises, and to dispossess them therefrom." As a matter of fact the rent due from the receivers during the time they have had possession of the property has been paid and all arrears of rent are such as are owing from the lessees, Howard & Co.

The petition was heard on March 25, 1914, and was denied. It was denied on three grounds: (1) That a landlord is not entitled, as a matter of right, to back rent as a condition of the affirmance by receivers in equity of a lease; (2) that if the landlords have such a right, they had waived it in this case; (3) that so far as the application is one addressed to the discretion of the court, that discretion should not be exercised in the landlords' favor.

The power of a court of equity to appoint a receiver has long been recognized as one of as great utility as any which belongs to the court. It is exercised to prevent fraud, or to save the subject of litigation from material injury, or to rescue it from inevitable destruction. A receiver is appointed when it appears necessary to do so to preserve the property and give adequate protection to the rights of the parties interested in it. This was the purpose of the court in the appointment of the receivers in this cause. The intention was to prevent injury to creditors by a slaughter of the assets through forced sales and also to prevent a preference among creditors. This may well be kept in mind in passing upon the question which is presented. The receivers have not been appointed for the benefit of any particu-

lar party, but upon a principle of justice and for the benefit of all parties interested. These receivers are the representatives of the court and of all the parties in interest. They have been put into the possession of this property because the interests of justice can in this way be best secured. The receivers are but the arm and the hand of the court, a part of the machinery of the court to work out the ends of justice. The property of which they have the possession is in custodia legis. It is elementary that the receivers have only such power and authority as are given them by the court and that they cannot be sued touching the property in their charge without the court's consent.

It being conceded that where property is in the hands of receivers no action can be brought against the receivers without the consent of the court appointing them, it is said it is not usual for the court to refuse leave unless it is perfectly clear that there is no foundation for the demand. Ordinarily this is true, and if the question is whether the property which a receiver has taken into his possession as being the property of A. is the property of A. or in reality belongs to B., who is claiming it, there may be no sufficient reason why the court should not allow that question to be determined in a suit against the receiver, unless the court can see upon the facts stated that B.'s claim is clearly without merit. But that is not the question in this case. There is no dispute here as to whether the lessees, Howard & Co., got a good title under their lease. The question is whether, having obtained a concededly good title under the lease, the lessors will be permitted by a court of chancery to forfeit the lease, after it has been adopted by the receivers, for a default which is not the default of the receivers, but of the lessees, who failed to pay all the rent due before the receivers took possession. The lessees insist that unless the receivers pay the arrears of rent they must surrender the premises. They insist that receivers have no right to assume a lease unless all arrears of rent are paid. If that be the law, then the court must authorize a preference in favor of the lessor creditors or else surrender the lease; and whichever course the court adopts would work to the prejudice of the body of the creditors, and nullify in some degree the purpose of the court in the appointment of the receivers. Either the court must give a preference to the lessors by compelling the payment of the entire amount of their claim, or else it must deprive the other creditors of the benefit which will accrue to all by allowing the receivers to continue carrying on the business in the old and accustomed place. If this is a matter which rests within the discretion of the court appointing the receivers, we cannot say that that discretion has been improperly exercised in this case.

[1] It is generally considered to be a matter within the discretion of the court whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. In Porter v. Sabin, 149 U. S. 473, 479, 13 Sup. Ct. 1008, 1010, 37 L. Ed. 815 (1893), the Supreme Court, speaking through Mr. Justice Gray, said:

"When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the

court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. Wiswall v. Sampson, 14 How. 52, 65 [14 L. Ed. 322]; Peale v. Phipps, 14 How. 368, 374 [14 L. Ed. 459]; Booth v. Clark, 17 How. 322, 331 [15 L. Ed. 164]; Union Bank v. Kansas City Bank, 136 U. S. 223 [10 Sup. Ct. 1013, 34 L. Ed. 341]; Thompson v. Phenix Ins. Co., 136 U. S. 287, 297 [10 Sup. Ct. 1019, 34 L. Ed. 408]. It is for that court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals, or may leave him to adjust and settle them without suit, as in its judgment may be most beneficial to those interested in the estate. Any claim against the receiver or the corporation the court may permit to be put in suit in another tribunal against the receiver, or may reserve to itself the determination of; and no suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him. Barton v. Barbour, 104 U. S. 126 [26 L. Ed. 672]; Texas & Pacific Railway v. Cox, 145 U. S. 593, 601 [12 Sup. Ct. 905, 36 L. Ed. 829]."

See, also, Werner v. Murphy (C. C.) 60 Fed. 769; Kennedy v. Indianapolis, etc., R. Co. (C. C.) 3 Fed. 97; Klein v. Jewett, 26 N. J. Eq. 474; Gunning v. Sorg, 214 Ill. 616, 73 N. E. 870; Stephens v. Augusta Tel., etc., Co., 120 Ga. 1082, 48 S. E. 433; Reed v. Axtell, 84 Va. 231, 4 S. E. 587.

In refusing its consent to allow a suit to be brought in the state courts the court had all the facts before it, and it came to the conclusion that the right which the landlords seek to enforce against the receivers did not exist. When a court can see from the facts stated that the so-called right is not a right, it is not even called upon to exercise its discretion and determine whether or not it will permit a suit to be brought in another court against its receivers, thereby exposing them to the costs of a needless and fruitless litigation at the expense of the creditors.

[2] Was the court in error in holding that a landlord is not entitled as a matter of right to back rent as a condition of the affirmance by chancery receivers of a lease? Counsel called attention to a paragraph in the lease which reads as follows:

"That the said tenant will not assign, transfer, or make over this lease, or any of the covenants, terms, or conditions thereof, or any part thereof. to any person or persons, corporation or corporations, without the consent in writing of the said landlords, first had and obtained, under penalty of forfeiture and damages."

It is said that the landlords have not consented in writing or otherwise to any assignments of the lease to the receivers. But they themselves came into court and asked to have a time fixed when the receivers would determine whether they would accept or renounce the lease. And we do not regard the covenant against assignment as at all material for two reasons. The first is that such a covenant is not broken when the assignment is not voluntary, but is done by operation of law. Taylor on Landlord and Tenant, § 408. In this case there has been no voluntary assignment of the lease by the lessors. The second is that there has been no assignment whatever either voluntary or involuntary of the lease. The chancery receivers are not assignees of the lease. By their appointment they acquired no title. They only ob-

tained a right to the possession of the property as the officers of the court. Keeney v. Home Ins. Co., 71 N. Y. 396, 27 Am. Rep. 60; Stokes v. Hoffman House, 167 N. Y. 554, 559, 60 N. E. 667, 53 L. R. A. 870.

Then attention is called to the fact that the lease provides that if default is made in the payment of the rent, or any part thereof, it shall be lawful for the landlords to re-enter the demised premises and repossess and enjoy the same as in their first and former estate. The Common Pleas Court of New York in Hasbrouck v. Stokes, 13 N. Y. Supp. 333 (1891), decided that when a voluntary assignee for the benefit of creditors accepted a lease held by the assignor, which had become subject to forfeiture by such assignor's breach of the covenant to pay rent, the lessor could maintain summary dispossessory proceedings against the assignee. In that case Judge Pryor said:

"It is said, however, that the assignee, not being liable for the rent, cannot be dispossessed for the fault of his assignor. But the inference is a non sequitur. By express provision of the Code (section 2231) an undertenant may be summarily removed, and yet an undertenant is not liable for rent to the landlord. By virtue of the statute, if not by express provision in the lease, It was a condition of the original demise that a breach of the covenant for rent should expose the term to forfeiture at the option of the landlord. If for default in payment of rent the assignee may not be dispossessed, then he is in a better position than his assignor; and, furthermore, he holds by a tenure to which the lessor has never assented. The assignee was under no obligation to accept the lease, but, having accepted it, he takes it cum onere— i. e., with liability to forfeiture for arrears of rent. True, that since his liability for rent is only because of privity of estate, that liability is only for payment of rent accruing while his estate subsists; but it does not follow that the landlord may not recover the land of him for condition broken by his assignor. * * * Upon default in payment of rent, the statute plainly gives the landlord a right to reclaim his land from the lessee, or whoever holds under him. Indeed, the words of the statute are, 'the lessee or his assigns,' and 'assigns' is the equivalent of 'assignees.' "

If the principle adopted in the foregoing case is correct as applied to the facts existing in that case, and as to that it is not necessary to express any opinion, it does not follow that it governs the case at bar. An assignee for the benefit of creditors differs in important respects from a receiver appointed by an equity court. He holds the title to the property and derives it directly from his assignor and not from the court. His possession is not always the possession of the court and the property he holds is not necessarily in custodia legis. He is not an officer of the court and does not derive his powers from the court, but from the deed of his assignor and the statute law of the state. See Adler v. Ecker (C. C.) 2 Fed. 126 (1880); Lehman v. Rosengarten (C. C.) 23 Fed. 642 (1885); Lapp v. Van Norman (C. C.) 19 Fed. 406 (1884). Such is his status except where the statute law of a particular state has changed it. The rules which govern an assignee are not necessarily applicable to a chancery receiver who holds no title, is an officer of the court and derives his powers from the court, and is simply holding possession for the court pending a settlement of the estate.

An assignee for the benefit of creditors, if he elects to accept a lease belonging to his assignor, becomes by such election an assignee

of the lease, holds the title, and becomes personally liable on the covenant to pay rent. But it is not so in the case of a chancery receiver. A chancery receiver takes no title to the leasehold estate, but has mere possession as an officer of the court. This has been expressly decided by the New York Court of Appeals in Stokes v. Hoffman House, 167 N. Y. 554, 60 N. E. 667, 53 L. R. A. 870 (1901). In that case the court also held that no privity of estate could be created between a chancery receiver and the lessor by which the receiver could become liable as assignee of the term upon a covenant to pay rent. The acceptance of the lease imposed, according to that decision, no legal liability upon the part of the receiver to pay rent, but gave to the lessor merely an equitable claim to have the rent paid as a part of the reasonable expenses of the receiver in carrying on the business.

Now it is perfectly evident that the mere appointment of a chancery receiver does not affect title, and it is equally evident that acceptance of a lease by a receiver acting under the authority of a court in accepting it does not and cannot invest the receiver with title. Equity acts only in personam. A decree in equity never divests a title at law, except in pursuance of a statute expressly conferring the authority. But it is not necessary for us to inquire whether, after a receiver has been appointed and a court of equity has taken possession of the property pending a settlement of an insolvent estate, a landlord has a right to forfeit the lease as against the receivers. If we assume that the right exists, and we are not to be understood as intimating that we doubt its existence, we think the facts of this case are such that the landlords are not at this time entitled to come into court to assert it.

Where a right of re-entry is reserved in a lease in case of failure of the lessee to perform a covenant on his part, an acceptance by the lessor of rent accruing after a breach of the covenant, with knowledge on his part of such breach, is a waiver of the forfeiture and an affirmance of the lease. Conger v. Duryell, 90 N. Y. 594 (1882). So if a landlord, after a forfeiture has been incurred, proceeds to make a distress for rent previously due, the right to re-enter is waived because by distraining he recognizes the relation of landlord and tenant and the lease as still existing. Zouch v. Willingale, 1 H. Bl. 311; Jackson v. Allen, 3 Cow. (N. Y.) 220.

As we understand the law, it is that the landlord is unable to assert his right of re-entry or his right of forfeiture if, with knowledge of the tenant's default, he thereafter does any act which recognizes the tenancy as still subsisting or the lease as still in force. When the landlords came into court on January 30, 1914, and asked the court to fix a time within which the receivers should decide whether they would adopt or renounce the lease, and when they again appeared on February 9th for the same purpose, they recognized the lease as still in full force, as much so as though they had distrained at that time for the rent. For if the lease was not then in full force and effect, and if there was not an existing tenancy, there could be no lease for the receivers to adopt. By that act the receivers waived

their right to insist upon the forfeiture. The default in the payment of rent for which they now seek to forfeit the lease occurred prior to January 6, 1914. There has been no default since that time. Moreover, the acceptance by the lessors of the rent called for by the terms of the lease, and which has been paid in full ever since the receivers assumed possession, must also be regarded as a recognition of the continued existence of the lease. The money paid each month is the exact amount of rent the lease called for. In view of all the facts we must then conclude that after the last default occurred the landlords recognized the lease as still in existence, and having done so they are not now at liberty to set it aside for the prior default.

The decree is affirmed.

HAND, District Judge (dissenting). The majority of the court in this case does not, as I understand it, question the proposition, though they do not decide it, that, if a receiver in insolvency proceedings accepts a lease on which back rent is due, he takes subject to existing defaults upon conditions subsequent in the term. I should be sorry if any doubt were thrown upon that, and there is no intention, if I am right, to do so. The gravamen of the decision is this: By asking the court to compel the receivers to make their election the landlords recognized the lease as still in existence, and that recognition was a waiver of their right of forfeiture. A landlord may by his conduct waive a breach of condition either for failure to pay rent or for anything else. Thus a distress even for rent accruing before the default will waive the breach and toll the re-entry, because distress is a remedy which lies only against a tenant and presupposes that the term still endures. Stuyvesant v. Davis, 9 Paige (N. Y.) 427; Jackson v. Sheldon, 5 Cow. (N. Y.) 448. So, also, suit to recover for a subsequent installment, or even the receipt of such an installment is enough, because there can be no subsequent rent, unless it arise from the term. In all these cases, if a landlord be later allowed to re-enter as of a default earlier than the time of the distress or the period for which the rent is due, he will have got a right or a remedy which depended upon the existence of the term at one period which by his subsequent action he wishes to declare nonexistent during that period. Such I think are all the cases. I have not been referred to a case which holds a landlord to be estopped, because he spoke of a "lease," or acknowledged that the termor had some existing rights as of course he has.

What the landlords did here in order to compel the election appears in the recitals of the order of February 9, 1914, and the affidavit of Charlton verified the same day. No petition was made; the whole thing was done orally, except for the affidavit. It appears from this that on January 30th, the landlords' attorney told the court that they wished to have a time fixed within which the receivers should decide "what was their intention concerning said lease." After an adjournment and a subsequent appearance for the same purpose the court fixed a time, within which the receivers took the lease. Had the landlords asked that the receivers should within a fixed time declare

their intention "concerning their option to accept the defendant's rights in the forfeited lease," there would have been no waiver, as I understand it. Because without condition they called it a "lease," their recognition of it constituted a waiver. I cannot really see why, if this be so, we must not also say that it is a waiver to demand unconditionally of a termor rent already due under his "lease" or under "the lease under which you now hold." A landlord must be careful not to speak of the lease as such, without adding that he reserves all his rights.

I can find no authority for such a ruling, and it seems to me an interpretation of the conduct and language of the parties which violates their intention and the universal practice of all landlords and tenants. When the landlords asked the receivers to declare their option regarding the "lease," no one would, I think, have supposed that they intended to waive any existing conditions, and we ought to interpret language when we can as it is meant. The lease remains yet a lease, though the landlords may forfeit it if the lessee continued in default. Until then it is a lease, and may never be anything else. Why should he not call it what it still remains, without adding a complete statement of his rights regarding it? To require him, every time he mentions it, to attach a reminder that he makes no waiver, appears to me to substitute a purely factitious requirement to a perfectly plain transaction.

The other alleged waivers it is necessary to take up, if one disagrees upon the point I have just discussed. They are three: (1) The agreement of December 16, 1913; (2) the payment by the receivers during their occupation; and (3) the filing of the claim in the receivership proceedings. The first is not a waiver, in my judgment, for two reasons: First, because the sum received does not even amount to one month's rent, and there are three due. The landlord would have the right to allocate the payment on the first month's rent, leaving the subsequent rents unpaid. Now it is a well-settled principle that the receipt of rent waives forfeitures only for the period antedating that upon which the rent is applied, and the subsequent unpaid rents, with their several forfeitures, remained sufficient ground of forfeiture. However, the landlord specifically reserved all his existing rights, notwithstanding the security which he took, as he had the right to do, and this is a complete answer. Second, the acceptance of money from the receivers was not a payment of rent under the lease. It is well settled that the receivers or trustees in bankruptcy do not take over the term until they voluntarily accept it or remain mute an unreasonable time. Re Frazin, 183 Fed. 28, 105 C. C. A. 320, 33 L. R. A. (N. S.) 745. Until then everything they receive is by way of payment for occupation. This was in fact the case of the January payment. The receivers had not accepted the lease and could not pay the rent. The use of the word "rent" in the receipt was intended by neither side to constitute an acceptance of the lease or a payment of rent under it; but, if it had been, it was without the authority of the landlord, whose agent had not the right to bind him.

Finally, there is the question of proving the claim in bankruptcy.

216 F.—38

On January 30th the final decree was entered directing all persons to file claims on or before February 16th. On the earlier day the landlords appeared and asked the court to fix a time within which the receivers must elect to accept the lease. That matter was adjourned until the 9th of February, when formal application was made and the court fixed the 4th day of March; the claim was not filed until February 13th. Thus it appears that the receivers were not called on by the court to decide before the time expired within which the landlords must file claims. If they did not file, they lost their dividends; and if the receivers later repudiated the lease, they could never recover anything for those months. It seems to me, in view of this, that the filing of the claim should not be taken as a recognition of the lease, inconsistent with the right of re-entry, but that it should be taken as a provision against repudiation by the receivers.

I dissent, and vote to reverse the order, and allow the landlords to sue in ejectment upon the breach of condition subsequent. I do not mean that in any event this court should forbid landlords recourse to the state court under such circumstances; but I have considered the merits, since the decision has been upon the merits. In any event it would seem to me that the proper place to decide all such matters was in an action of ejectment in some court of competent jurisdiction.