W. J. Lewis and Jones & Laughlins, Limited, *v.* Linden Steel Company, a corporation of Pennsylvania. Appeal of the Second National Bank of Pittsburg.

*Receivers—Receiver's certificates—Priority of lien.*

Where money is borrowed by a receiver to operate works, and the receiver's certificates which are issued therefor under an order of court by which they are given priority of lien are voluntarily surrendered by their owners for later certificates issued under an order of court without any priority of lien, the substituted certificates have no preference over debts contracted by the receiver for necessary materials to carry on the works.

Argued Oct. 28, 1897. Appeal, No. 108, Oct. T., 1897, by Second National Bank of Pittsburg, from order of C. P. No. 2, Allegheny Co., April T., 1895, No. 272, sustaining exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of auditor.

The auditor, Thomas Herriott, Esq., reported the facts to be as follows:.

There is no conflict of testimony in this case, and the testimony taken by the auditor shows that on February 11, 1895, Henry Warner was appointed receiver of the Linden Steel Com-

pany, which operated a manufacturing plant in the city of Pittsburg, and was engaged in the manufacture of various kinds of steel.

On February 16, 1895, the receiver presented his petition asking to be allowed to operate the works in whole or in part, and an order was made allowing him to operate these works until March 2, 1895. On March 2, 1895, another order was made, allowing him to continue operations for three months after that date. On June 1, 1895, a further order was made authorizing the receiver to operate the plant for the Linden Steel Company for six months or until further order of the court. The receiver also presented to court a petition asking to be allowed to borrow money to be used in operating the plant, and on June 17, 1895, the court made an order authorizing the receiver to borrow a sum not to exceed $30,000 for that purpose, and to secure the payment of the money so borrowed by issuing receiver's certificates in the form prescribed in that order. This order provides that the " said certificates shall be a lien upon the personal property and earnings of the Linden Steel Company, in possession of the receiver, prior in right to all other claims thereon, and shall be first payable thereout." By an order of June 29, 1895, the form of the receiver's certificates provided in the order of June 17, 1895, was changed, but no other change was made in the order. Mr. Warner, as receiver, issued certificates to the amount of $30,000. He continued to operate the works until the early part of September, 1895, when he died, and on September      , 1895, Charles F. Wells was appointed his successor.

On October 12, 1895, Mr. Wells, as receiver, presented his petition to this court, setting forth the condition of the works and alleging that it would be for the best interests of all concerned to authorize the receiver to issue additional certificates like unto those heretofore issued, and not exceeding the sum of $70,000 ; and in the prayer of his petition, he asked that " such certificates should be a lien upon the personal property and earnings of the Linden Steel Company, in possession of the receiver, and prior in right to all other claims thereon, and shall be first payable thereout." On October 26, 1895, the court granted Charles F. Wells, as receiver, authority to issue certificates to the extent of $70,000, making the following order :

" It is now ordered, adjudged and decreed that the said re-

ceiver be, and he is hereby authorized and empowered to issue receiver's certificates of the form in said petition set forth, and to an amount not exceeding seventy thousand dollars, and in such sums, and for such time, and with such rate of interest, not exceeding six (6) per centum, as the receiver may deem proper; and that said receiver's certificates may be issued by the receiver for borrowing money, or given for materials purchased, or otherwise issued as he shall deem proper in the condition of the business of the Linden Steel Company."

Mr. Wells continued to operate the works until about July, 1896. After being authorized to issue certificates, as above, Mr. Wells issued certificates to the amount of $65,000. With the proceeds of these certificates he lifted and retired the $30,000 of certificates issued by the former receiver, and the balance he used in the· operation of the works.

In addition to the sum borrowed, the receiver incurred debts in operating the plant amounting to $41,486.36. These debts were all incurred for supplies furnished to the receiver, and used by him in the operation of the works, but no receiver's certificates were issued by the receiver to any one for supplies. The only use made of them was in borrowing money.

One question raised in this case is that the parties who have thus furnished supplies to the receiver, which have been used in the operation of the works, and have been necessary to their operation, claim that they are entitled to be paid pro rata with the receiver's certificates issued as aforesaid; while the holders of receiver's certificates claim that the whole balance in the hands of the receiver shall be applied to their payment, and no part of it should be applied to what may be called the open book accounts.

Another claim made before the auditor is that of Naylor & Company, who claim a preference. In December, 1895, Naylor & Company made a contract with the receiver, Mr. Wells, to supply to him three thousand five hundred tons of Bessemer pig iron at the rate of $12.75 per ton, to be delivered monthly, five hundred tons per month. They continued delivering the metal called for by the contract, the last delivery being made on May 25, 1896, when all or nearly all of the metal called for by the contract had been delivered to the receiver. For the metal delivered during the months of April and May, 1896, there was

a balance due Naylor & Company of the sum of $8,162.33.   On July 1, 1896, Naylor & Company presented their petition to this court, setting forth the contract and the fact that part of the pig iron delivered during April and May, 1896, as set forth in said petition, was still unpaid for; that they had demanded payment for the same but had never received it; that a large portion of the Bessemer pig iron so sold and delivered to the receiver, was still in the metal yards of the Linden Steel Company, under the control of the receiver, and could be readily identified, and asking the court to direct the receiver to redeliver to Naylor & Company, without further costs, the said pig iron, or a sufficient amount thereof, still retained by the receiver, to cancel this debt.

The auditor refused to give a preference to the claim of Naylor & Co., but gave a preference to the holders of the receiver's certificates.

Exceptions to the auditor's report were in part sustained, WHITE, J., filing the following opinion:

The exception of Naylor & Company, claiming a priority in payment, is not sustained.   They sold the Bessemer pig iron to the receiver to assist in carrying on the business, as other parties furnishing supplies, with direct knowledge that the receiver was conducting the business under the order of court. They sold and delivered the pig iron, parting with their title, and relying upon the receiver for payment.   So there was no fraud, deception, or misrepresentation in the purchase, they have no ground on which to claim a return of that portion of the pig metal not used up.   They stand on precisely the same footing as other creditors who furnished supplies.   This exception dismissed.

The order of court authorizing Mr. Warner to issue certificates expressly made them a "lien upon the personal property and earnings of the Linden Steel Company in possession of the receiver, prior in right to all other claims thereon and shall be first payable thereout."   The order of court authorizing Mr. Wells to issue receiver's certificates to the extent of $70,000, omits this as to the lien and priority.   The auditor says the order to Mr. Wells was "slightly different" from the order to Mr. Warner.   I think it was radically different in a most impor-

tant particular. The court might well make the $30,000 asked for by Mr. Warner when he first entered upon the receivership a first lien upon the personal property and earnings, but refuse to give that preference to $70,000 more, which would make a total of $100,000. Mr. Wells did not ask for $70,000 to be used partly in lifting and retiring the $30,000 issued by Mr. Warner. He might have used it all in contracting new debts. Possibly that consideration may have influenced the court in not making these new certificates a prior lien, and possibly may have thought that with $70,000 of new certificates there would be no necessity of incurring other debts. True, the petition of Mr. Wells asked that these new certificates be given a preference, like those issued by Mr. Warner. But as the order of court did not contain that clause, we must conclude that the court refused that part of his petition. Under the discretionary power given to Mr. Wells, he could use $30,000 of the new certificates in lifting and retiring the old, and probably acted wisely in doing so. That left $40,000 for other purposes, of which he issued only $35,000. But he incurred other debts to the extent of some $41,000. These other debts, it is admitted, were all for supplies necessary to carry on the business and were contracted by Mr. Wells after he applied to court for power to issue certificates. The holders of the certificates issued by Mr. Warner had, undoubtedly, a preference to other creditors, as specified in his order of court, and if they had held on to those certificates, they would now have a preference. But they voluntarily surrendered those certificates and accepted in lieu of them, certificates issued by Mr. Wells. Before they accepted these new certificates they were bound to look into the order of court to see what power Mr. Wells had. Had they done so, they would have seen that these new certificates had no preference. Not having done so they have no just ground of complaint.

Mr. Wells, as well as Mr. Warner, was authorized to carry on the business of the Linden Steel Company, a large establishment, requiring a large expenditure of money, and almost daily purchase of materials and supplies. The purchase of the necessary materials and supplies was incident to, and impliedly granted, in the authority to carry on the works. The schedule of the other debts, attached to the auditor's report, aggregating

$41,486,36, is composed of sixty-three creditors, and most of them of small accounts. There is one for $8,162, one for $7,713, one for $7,600, one for $3,664, one for $2,671, one for $2,400, one for $1,961, one for $1,422, one for $1,031, one for $728, one for $595, and all the others for less amounts, most of them indeed under $100. All of these debts were contracted by the receiver under the authority given to him by the court, and they have as much claim upon the court for protection as the holders of the certificates. The receiver had no power to contract debts, or issue certificates, without authority from the court, and when that authority is given, they stand on the same footing, unless the court expressly places the certificates on higher ground.

If these other creditors had looked into the order granted to Mr. Wells, as they were bound to do, they would have seen that the certificates, under the order of court, had no priority or preference to their debts. It would, therefore, be manifestly unjust to them to give the certificates a preference.

Perhaps this contention is useless; for the attorney of the receiver said in court, during the argument, that it was the opinion of the receiver he would be able, after disposing of all the personal property, to pay in full the certificates and all these debts.

The exceptions to the auditor's report giving a preference to the certificates are sustained, and the matter is referred back to the auditor to make distribution of the fund, pro rata, among the creditors, in accordance with this opinion.

*Errors assigned* were in sustaining exceptions to the auditor's report.

*S. W. Cunningham,* with him *Thomas D. Chantler* and *Wm. M. McGill,* for appellant.—The book debts here were contracted after the order authorizing certificates. The test is not whether the debt was contracted for a reasonable or even necessary purpose unless it is so small as to come within the category of the receiver's necessary expenses : Jones on Railroad Securities, sec. 542; Union Trust Co. v. Illinois M. Ry., 117 U. S. 434.

When the receiver has borrowed large sums of money without authority of the court, priority will not be allowed to such

obligations, even though the money has been expended for necessary expenses of the receivership, for repairs, pay rolls and supplies : High on Receivers, sec. 398 i; Morgan's Co. v. Ry. Co., 137 U. S. 171; Farmers' L. & T. Co. v. B. & M. Tel. Co., 148 N. Y. 315; Gluck & Becker on Receivers of Corporations, 513 and 522, note 1; Meyer v. Johnston, 53 Ala. 237; Dow v. Memphis & L. R. R., 20 Fed. Rep. 260.

The open book accounts of the general creditors are debts contracted by the receiver without authority, either express or implied : Story on Agency, sec. 83; Booth v. Clark, 17 How. 331; High on Receivers, sec. 1; Bank v. R. R., 7 Cent. Law Jour. 267; Jones on Railroad Securities, sec. 542; Bouvier's and Anderson's Law Dicts. title " Receivers."

All persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their peril : Beach on Receivers, sec. 257; Article on " Receivers " by C. Stuart Patterson, 14 W. N. C. 522.

*W. S. Miller* and *J. J. Miller*, with them *C. C. Dickey, George P. Hamilton* and *W. W. Wishart*, for appellees, cited Gluck & Becker on Receivers, 520; Beach on Receivers, sec. 384; Meyer v. Johnston, 53 Ala. 237; Dow v. R. R., 20 Fed. Rep. 260.

PER CURIAM, November 8, 1897 :

This appeal is from the final decree dismissing exceptions to the learned auditor's second report and ordering distribution in accordance with the accompanying schedule. A careful consideration of the questions presented by the record has satisfied us that there is no substantial error in the decree. For reasons given in the opinion of the court, filed March 24, 1897, the decree should not be disturbed.

Decree affirmed and appeal dismissed at appellant's costs.