BALL v. IMPROVED PROPERTY HOLDING CO. OF NEW YORK.
EMPIRE TRUST CO. v. IMPROVED PROPERTY HOLDING CO.
OF NEW YORK et al.   Ex parte PARSONS et al.

(Circuit Court of Appeals, Second Circuit.   December 24, 1917.)

No. 54.

1. RECEIVERS ⊂⊃128—RECEIVERS' CERTIFICATES—PRIORITIES.

Where the order providing for the issuance of certificates by the receiver of an insolvent corporation which included as part of its assets a term for years, in valuable real property, made no provision for priority to the holders of the certificates, which were issued to secure funds to pay taxes, rent and other charges the nonpayment of which entitled the lessors to retake the property, the holders of such certificates are not entitled to priority over the subsequently accruing claims of the lessors for rent, for there is no difference in equity between the claims for rent due before the insolvency, which were secured by the right of re-entry, and which the certificates paid, and that due afterwards which was equally secured and which the lessors forebore to assert by re-entry.

2. RECEIVERS ⊂⊃128—RECEIVERS' CERTIFICATES—PRIORITIES.

As every one who deals with a receiver knows that he has power to charge the estate only as the court may authorize him, and as the court having the funds in its custody may establish such priority as it sees fit, at least against those creditors who take the credit of the receiver after the order authorizing the earlier debt has once been passed, the rights of those taking receivers' certificates depend on the priorities given in the order providing for issuance of the certificates.

3. RECEIVERS ⊂⊃152—PRIORITIES—ADJUSTMENT.

The court is not absolutely bound to recognize the priorities in a receivership case fixed by its order, and that matter is open to equitable readjustment, however conclusive a protection the order may be to the receiver as to payments made under its terms.

4. RECEIVERS ⊂⊃128—PRIORITIES—ORDER.

Where to enable a receiver of an insolvent corporation to make payments to protect the corporation's leasehold, from which property the receiver was about to be dispossessed by the lessors on account of nonpayment of rent and other charges, the court authorized the receiver to issue certificates under an order declaring they should constitute a lien upon all the property of every nature of the corporation and upon its net earnings, and that such lien should be prior to a specified mortgage, and to the general claim of unsecured creditors, the holders of the certificates were given no priority over the lessors for subsequently accruing claims for unpaid rents; both being creditors of the receiver.

5. RECEIVERS ⊂⊃152—ASSETS—MARSHALING.

Where the holders of receivers' certificates had no priority over the claims of lessors for rents becoming due after receivership on property in which the insolvent corporation had a leasehold interest, the several claims and the funds for which the receiver was to account should be brought into hotchpot and the funds distributed pro rata.

6. RECEIVERS ⊂⊃128—RECEIVERS' CERTIFICATES—PRIORITIES.

An order continuing a receivership declared that 10 per cent. of the gross rents and incomes of the property should be set aside in a separate fund held for or applied to the expenses, charges, or obligations of the receivership, and further provided that after making certain deductions the receiver should pay and apply the balance of the rents and income from such property to the payment of taxes and other governmental charges thereon and the rentals due the owners. To prevent the lessors

of property in which the corporation had a leasehold interest from dispossessing him on account of nonpayment of rents and taxes, the receiver under authority of the court issued certificates to obtain funds for the payment of those charges. *Held,* that such certificates could not be construed as obligations for which a percentage of the profits was reserved, but that term should be understood as referring merely to the ordinary expenses of the receivership; nor could the order be construed as giving a priority to rent charges subsequently accruing over the certificates.

7. RECEIVERS ⬥➾128—RECEIVERS' CERTIFICATES—PRIORITIES.
Expenses of receivership, including allowances to receivers' solicitors, are taxable as costs and entitled to priority over the receivers' certificates; but allowances to a mortgage trustee and its solicitors are not entitled to such priority.

8. RECEIVERS ⬥➾128—RECEIVERS' CERTIFICATES—PRIORITIES.
Where receivers' certificates were issued subject to costs, counsel fees, and disbursements, but the claims of lessors for rents on property held by the receiver and which accrued during the receivership stood on the same footing as ordinary receivership certificates being debts of the receiver, funds remaining in the hands of the receiver after deducting the allowances to his attorney and the incidental charges should be ratably divided between the lessors and certificate holders; the allowance to the mortgage trustees and their solicitors being a charge against the sum apportioned to the certificate holders but not the lessors.

9. APPEAL AND ERROR ⬥➾900—REVIEW—PRESUMPTIONS.
Where no appeal was taken from an order denying the holders of receivers' certificates certain priorities, it must be assumed that they did not assert priority over those charges.

10. RECEIVERS ⬥➾99(1)—DEBTS—RENT.
Where the receiver of an insolvent corporation who took possession of property in which the corporation had a leasehold interest, and, to prevent the lessors from dispossessing him on account of the nonpayment of charges and rent, secured an order providing for the issuance of certificates to obtain funds to pay such charges, the lessors' claim for rent subsequently accruing and which was secured by the right of re-entry is a proper debt against the receiver, regardless of whether his possession in the first instance was neutral, and may be asserted as such in a proceeding to settle the receiver's accounts.

Appeal from the District Court of the United States for the Southern District of New York.

Creditors' bill by Alwin Ball, Jr., against the Improved Property Holding Company of New York, together with ancillary dependent bills by the Empire Trust Company, as trustee, against the Improved Property Holding Company of New York and others. A receiver was appointed, and Eliza L. Parsons and others, trustees under the last will and testament of William Barclay Parsons, deceased, and others, and Eliza L. Parsons and others individually, filed objections to the account of the receiver. From an order sustaining the report of the master, and overruling their objections, Eliza L. Parsons and others appeal. Reversed and remanded.

This is an appeal from an order disposing of the balance of a certain sum of money in the hands of the receiver of the defendant herein upon confirmation of a master's report filed June 13, 1916. The order was made in the administration of the property of the defendant, which came first into this court by a creditor's bill to sequester all the assets of the corporation and to prevent its dissipation by attachments, executions, and

---

⬥➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other legal process issued by its creditors. In May, 1912, the bill was filed and a decree entered on May 21, 1914, appointed temporary receivers for the corporation, followed on May 31, 1914, by an order making permanent such receivers and directing them to conserve the assets of the company for its creditors. The assets of the corporation consisted for the most part of terms for years in real estate in the city of New York, among which was a lease to the corporation from certain individuals who were trustees under the will of William Barclay Parsons, deceased. The lease was made on January 21, 1908, and was at the yearly rent of $33,500 a year. It had the usual covenants to pay the taxes levied upon the property, rights of re-entry for defaults, and other clauses common in such cases. On June 3, 1912, the Parsons trustees applied to the District Court for leave to dispossess the receiver, who was in actual possession under the orders of May, 1912, and to take over the lease in accordance with the rights of re-entry therein provided, and this leave was given on July 16, 1912, and remained available to the lessors from that time on. At the time when the receiver was appointed the taxes were largely in arrears and the lessor had the right therefore to re-enter under its lease in accordance with the Code of Civil Procedure of the State of New York.

On July 3, 1912, the Equitable Trust Company, as trustee for bondholders under a mortgage executed on June 1, 1906, by ancillary dependent bill began to foreclose that mortgage. The Empire Trust Company was a party defendant to this suit, as trustee under a junior mortgage of May 24, 1909, known as B-mortgage, which covered part of the assets of the defendant. On July 12, 1912, the receivership was divided, and one set of receivers from that time forth took possession of and received the income from the property covered by the Equitable Trust Company mortgage which did not include the premises leased by the Parsons trustees. The third receiver, Joseph J. O'Donohue, continued as receiver of the rest of the property of the defendant, including the premises now in question. Finally, on November 20, 1912, the Empire Trust Company of New York, as trustee under the mortgage of May 24, 1909, already mentioned, by ancillary dependent bill started to foreclose its mortgage (the B-mortgage), and the receivership was extended to that property for the benefit of the Empire Trust Company as such trustee, and an order was signed on November 25, 1912, directing the disposition of the income from the properties to be made by the receiver. The relevant parts of that order are as follows:

"Ordered that Joseph J. O'Donohue, Jr., as receiver of the property of Improved Property Holding Company of New York, covered by its said mortgage dated May 24, 1909, pay and apply and disburse the rents and income from each of the properties in his possession as and when received by him as follows:

"(a) Ten per cent. (10%) of the gross rents and income of each of the said properties shall be set aside in a separate fund and held for or applied to the payment of the expenses, charges and obligations of the receivership, including a fair proportion of the expenses of the maintenance of the general offices of Joseph J. O'Donohue, Jr., as receiver in any of his aforesaid capacities at No. 505 Fifth avenue, borough of Manhattan, city of New York, and the wages of the employés and assistants connected therewith.

"(b) After the deduction of said ten per cent. all rents and income from the said property shall be applied to the payment of operating or maintenance charges or expenses of the said property, exclusive of taxes, ground rents and mortgage interest.

"(c) After making the deductions and payments provided for above in paragraphs (a) and (b) the said receiver shall pay and apply the balance of the rents and income from each such property to the payment of the taxes and other governmental charges thereon, and the rentals due the owners thereof, the interest on mortgages thereon, and other sums payable on account of obligations in respect of each such property, by the Improved Property Holding Company of New York and properly payable by the receiver hereby appointed, it being the intent of this order that the rents and income from each property applied under this provision shall be applied to such property only.

"(d) After making the deductions and payments provided for above in

paragraphs (a), (b), (c), the receiver shall hold the balance of the rents and income from each such property, subject to the further order of this court."

Meanwhile, the bondholders under the mortgage of May 24, 1909, known as B-mortgage, desiring to maintain the lease of 505 Fifth avenue, entered into negotiations with the Parsons trustees looking toward the payment of back taxes and made a provisional agreement with the Parsons trustees that upon the payment of such back taxes they should keep the leasehold for two years from January 1, 1913. In order to obtain the necessary money, which amounted to more than $30,000, on November 27, 1912, they petitioned the court for leave to issue receivers' certificates, the proceeds of which should go to pay those taxes, and relieve the term from the threat of re-entry, as well as to pay the interest due upon a mortgage of the term to the lessors. On the same day the court passed an order granting the prayer of this petition and authorizing the receiver to issue $30,000 of receivers' certificates. The material part of this order is as follows:

"Ordered that the prayer of said petition be and it hereby is granted so far as is hereinafter set forth, and the said Joseph J. O'Donohue, Jr., as receiver of the property of Improved Property Holding Company of New York, covered by its mortgage dated May 24, 1909, be and he hereby is authorized to issue his certificates of indebtedness to an amount not exceeding $30,000, upon the terms and conditions hereinafter set forth.

"Said certificates, to the amount of the principal and interest thereof, shall constitute a lien upon all the property of every nature and description of Improved Property Holding Company of New York, subject to its mortgage dated May 24, 1909, made to Empire Trust Company, as trustee, and upon all the net earnings and income of the said property after deduction of 10 per cent. of the income from the said property, as provided in the order filed in the above entitled causes on the 25th day of November, 1912, except so much of said property and earnings as may be necessary to defray costs, counsel fees and disbursements as finally allowed by the court. Said lien shall be prior, as respects said property, to the mortgage of Improved Property Holding Company of New York dated May 24, 1909, to the lien of the mortgage of Improved Property Holding Company of New York, dated October 1, 1911, made to New York Trust Company, as trustee, and to the claims of the general unsecured creditors of Improved Property Holding Company of New York. * * *

"The proceeds of the said certificates shall be applied to the following purposes and no other:

"(1) The payment of the arrears of taxes, water rents and other charges, together with interest thereon to the date of payment, assessed against the premises in the borough of Manhattan, in the city of New York, known as No. 505 Fifth avenue, which premises were leased by indenture dated January 24, 1909, between Eliza L. Parsons, Schuyler Parsons and William Barclay Parsons, as trustees, parties of the first part, and Improved Property Holding Company of New York, party of the second part.

"(2) To the payment of the arrears of interest upon the mortgage upon said leasehold, dated January 21, 1908, made by Improved Property Holding Company of New York to Eliza L. Parsons, and others, as trustees.

"(3) To the payment of interest at the rate of 6 per cent. per annum upon any deferred payments heretofore, since May 21, 1912, made to the lessors under said lease, from the date when such deferred payments became due to the date of the payment thereof.

"(4) To the payment of a counsel fee not exceeding $1,000 to counsel for the said lessors for legal services made necessary by the receivership of Improved Property Holding Company of New York."

Later it became necessary to obtain seven thousand dollars more upon similar receivers' certificates for the same purposes, and on the 17th day of November, 1913, the District Court passed an order in the same terms authorizing the issuance of such added certificates.

On June 1, 1915, the Parsons trustees obtained the leave of this court to begin the foreclosure of their mortgage upon the term for years because of the defaults in the payment of the installments of interest due upon the same,

and foreclosure was begun, a receiver appointed in the state courts, and the property taken out of the hands of the District Court.

The receiver having disposed of all the property in one way or another filed his accounts and prayed leave for a discharge on June 19, 1915. The accounts were later continued down to April 1, 1916, and showed a balance on hand derived altogether from the net income out of the property while it had been managed by him, and those funds which had been turned over to him on his separate appointment in June, 1912. On July second, 1915, the Parsons trustees filed certain objections to the account of the receiver as so filed, which matter stood over until April 13, 1916. Meanwhile, and on November 11, 1915, the Parsons trustees filed supplemental objections to the accounts, these latter seeking to raise the question whether the receivers' certificates had priority over their claims for rents which had arisen during the occupation of the receiver. The District Court on April 1, 1916, denied leave to the Parsons trustees to file the supplemental objections heretofore noticed, but referred the whole accounts as brought down by the revised summary of April 1, 1916, to a special master to take and state the same and to report on the proper allowances, claims and general distribution of the balance found due. This report the special master filed on June 13, 1916. He disregarded the claims of the Parsons trustees under the ruling of the District Court, passed the accounts, and made certain allowances to the receiver's attorneys. To this report the Parsons trustees excepted, but the report was confirmed with certain modifications in the allowances.

The substantial questions involved are those sought to be raised by the supplemental objections of the Parsons trustees, i. e., whether upon the net balance of the income derived from the management of all the properties covered by the B-mortgage the receivers' certificates are a lien ahead of the rent arising under the Parsons lease, and, if not, where in marshaling the income they should stand and where should stand the allowances to the trustee and its solicitors.

Spotswood D. Bowers, of Bridgeport, Conn., for Parsons trustees.

Reese D. Alsop, of New York City, for Empire Trust Co.

Edward F. Clark and Rogers Hinds, both of New York City, for holders of receivers' certificates.

Guy Van Amringe, of New York City, for receiver.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] Among the creditors of a receiver we see no reason why either the lessors or the certificate holders should enjoy a priority unless some such was established by the court. We are not dealing with a public service corporation (Texas Co. v. Int. & G. North Co., 237 Fed. 921, 150 C. C. A. 571), and unless it appears that the court meant to postpone the certificate holders to the lessors, or vice versa, we can see no reason upon the bare origin of their claims why either should step ahead of the other. We recognize no difference in equity between the rent due, before the insolvency which was secured by the right of re-entry and which the certificates paid, and that due afterwards which was equally secured, and which the lessors forebore to assert by re-entry. It is true that under Durand & Co. v. Howard & Co., 216 Fed. 585, 132 C. C. A. 589, L. R. A. 1915B, 998, the claim for rent due before the insolvency was held not to be preferred in distribution, but that case rested upon the waiver of the existing forfeiture involved in asking the court to compel the receiver to exercise his option to affirm or reject. The lessors did

not do so here, and theirs was a claim upon which they could have re-entered. The supposition, therefore, that the certificates should be postponed, because their proceeds only went to pay an existing debt of the corporation, is not true in fact assuming it would in any case be a good distinction, which we do not decide. The consideration advanced by each class of creditors, the lessors and the certificate holders, was for the essential preservation of the estate, since without it the best asset would have been lost. Each was a debt strictly within the powers of a court of equity which may pledge a part of the assets for the preservation of the rest; each was as much an operating expense as the other.

[2] As in all such cases, the order authorizing the debt is the most conclusive evidence of the rank which the creditors should hold among other claims on the fund. This has been repeatedly used as the test in cases of receivers' certificates. Anderson v. Condict, 93 Fed. 349, 35 C. C. A. 335; In re John W. Farley Co., 227 Fed. 378, 142 C. C. A. 74; St. Louis Union Trust Co. v. Texas So. Ry. Co., 59 Tex. Civ. App. 157, 126 S. W. 297; Lewis v. Linden Steel Co., 183 Pa. 248, 38 Atl. 606; In re J. B. & J. M. Cornell (D. C.) 201 Fed. 381. The court having the fund in its custody may establish such priorities as it sees fit, at least as against such creditors, as take the credit of the receiver after the order authorizing the earlier debt had once been passed. Every one who deals with a receiver knows that he has the power to charge his estate only as the court may authorize him, and, if a prospective creditor fails to inquire how far the assets may be already incumbered, he takes the risk.

[3] We do not forget that the court is not absolutely bound to recognize the priorities fixed by the order, and that the matter is open to equitable readjustment, however conclusive a protection it may be to the receiver as to payments made under its terms. Louisville Ry. Co. v. Wilson, 138 U. S. 501, 506, 11 Sup. Ct. 405, 34 L. Ed. 1023. But, as we shall show, the orders in this case established no priorities as between the classes, and we are therefore relieved of the necessity of determining in what circumstances we should disregard them. All we need assert is that, disregarding the orders, there is no inherent ground for priority between him who lends money to pay accrued rent which is secured and him who allows the use of his property upon the agreement that the accruing rent shall be paid. Just why it should be taken against the lessor that he thought it profitable to leave the property at the existing rent, or against the bondholders that they should have thought it profitable to assume the lease, does not appear obvious to us. We therefore proceed to consider the effect of the orders.

[4, 5] The order of November 27, 1912, did not profess to give the certificates any priority except as against the mortgagees and the unsecured creditors. We pass the question whether those words were necessary in any event to give that priority if the order was granted after the mortgagees had become parties to the suit by asking to foreclose. Whether necessary or not, they meant to go no further in establishing priority than to put the certificates ahead of creditors,

secured and unsecured, of the corporation. As between themselves and other creditors of the receiver the certificate holders stood, so far as we can see, on a parity for the reasons given above. Hence it follows that the rule should apply of Lewis v. Linden Steel Co., 183 Pa. 248, 38 Atl. 606, and In re J. B. & J. M. Cornell (D. C.) 201 Fed. 381, that the creditors of a receiver in the absence of some original marshaling to the contrary, or of some fundamental equity, shall share ratably. Therefore the fund should be brought in hotchpot with all the claims of receiver, and each should share pro rata. In so far as Perrin & Smith Printing Co. v. Cook Hotel & Excursion Co., 118 Mo. App. 44, 93 S. W. 337, gives the lessors greater rights merely as lessors, with deference, we do not follow it. It is to be noted in that case that the lessors had a lien upon all the improvements erected on the locus in quo, which were the source of the fund. The contest seems therefore to have been between a prior lien of the lessor not a party and the lien of the certificates. We need not differ from the decision rendered upon that question.

[6] Nor under the order of November 25, 1912, should the certificate holders be preferred as falling within the class secured by the ten per cent. reserve fund. Verbally taken, the word "obligations" would, of course, cover them; but we read the phrase rather in its context, and, so read, we believe that it was meant to cover the ordinary expenses which the receiver might have to pay currently as he went and such as he might not have paid when he accounted. Paragraph (c) of the order, on the other hand, does not affirmatively give a priority to rent over such charges as the certificates, because the latter by virtue of their payment of past rent, secured, as we have said, by the right of re-entry, partake enough of those claims to fall within these words of the order, which was passed before the back rent had been paid.

[7-9] The only question remaining is of the allowances to the mortgage trustee and its solicitors. As between them and creditors of the receiver, they have no priority. The court must first pay its debts, the solicitors must look to their client, and the trustee to its beneficiaries. Petersburg Savings & Insurance Co. v. Dellatorre, 70 Fed. 643, 7 C. C. A. 310. Such services, when performed for the general preservation of the fund, as, for instance, the allowances to the receiver's attorneys, stand on a different basis; but, when the solicitor of a party brings a fund into court for administration, he must look to the ultimate share of his client for payment for services rendered to that client, or to his retainer. This would, of course, free the share of the certificates as well, except for the language of the order of November 27, 1912, that the lien of the certificates shall be subject to "costs, counsel fees and disbursements." It is permissible to argue that this affects the lien only qua lien, but we think not. The purpose is pretty clear to give counsel fees priority as against the certificates, and among counsel fees we are disposed to include the allowances to the trustee's solicitors. The precise point was not argued, and we assume that the certificate holders in any case do not assert a priority over those charges, since they were allowed against them in the court below and no appeal was taken.

The net balance in the hands of the receiver will therefore be divided as follows: First, deduct the allowances to the receiver's attorney and the incidental charges of the receivership; next, divide the balance ratably between the lessors and the certificate holders; last, charge against the dividend of the certificate holders, the allowance to the solicitors of the trustee and to the trustee itself.

[10] We have, of course, assumed throughout that the claim for rent against the receiver was a proper debt of the receiver. This is not contrary to the doctrine of Stokes v. Hoffman House, 167 N. Y. 554, 60 N. E. 667, 53 L. R. A. 870. The very distinguished and learned judge who wrote the prevailing opinion in the case distinctly said that the rule did not apply to a claim by the lessor in the proceedings in which the receiver was appointed, and he specifically reserved such a right from the effect of the decree. In the case at bar it is evident from the petition of the receiver of November 27, 1912, that his purpose was to preserve the lease for the purpose of assigning it to a corporation which the bondholders at that time expected to organize. This certainly could not have been supposed to be possible unless the fund was charged with the intervening rents. We need not therefore decide what was the effect of the neutral occupation of the receiver after July 16, 1912, when the lessors were free to re-enter. Quincy, etc., R. Co. v. Humphreys, 145 U. S. 82, 12 Sup. Ct. 787, 36 L. Ed. 632; U. S. Trust Co. v. Wabash Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085. There can be no doubt that the receiver by his petition and the order upon it and the payment of the back rents meant to abandon his earlier neutral position, and that he became liable during his subsequent occupation, for all ensuing charges. This is equally true whether or not he had finally elected to assume the lease for all purposes. Any other interpretation of the proceedings resulting in the issuance of the certificates would make them a fraud upon the lessors, who continued to allow the receiver to remain in possession.

The order is reversed, and the cause remanded for further proceedings consistent with the foregoing.