## Campbell, etc., v. Harrisburg Manufacturing and Boiler Co.

*Paul G. Smith,* for exceptant; *Samuel Levin,* contra.

WICKERSHAM, J., June 9, 1933.—We have before us exceptions to the auditor's report in the above matter.

On November 30, 1929, upon proper proceedings, receivers were appointed for the said Harrisburg Manufacturing & Boiler Company. On December 3,

1929, the receivers presented a petition to the court, averring in substance that prior to the receivership the company had entered into contracts to manufacture certain products, upon which contracts the company had expended in labor and materials the amount of approximately $21,465.95, leaving an approximate balance of $26,704.53 to be expended for labor and materials to complete the same; and that by completing the contracts the money already expended on the contracts could be saved and a profit secured; that Harrisburg Trust Company was the assignee of a part of these contracts, in the sum of approximately $15,745.50, and that it would supply that portion to fulfil the company's part of the contracts; that the amount required to be raised by the receivers would be approximately $10,000; and that it would be to the interest of the said stockholders and creditors to complete the said contracts. Thereupon the court, on the said date, made the following order and decree:

"And it is ordered, adjudged, and decreed that the receivers continue the business of the company insofar as it is necessary to complete the contracts of the company accepted by the company prior to this receivership and on which labor and material have been expended, as in the petition set forth, and that the receivers borrow the sum of $10,000 or so much thereof as may be necessary on receivers' certificates, for the purpose of continuing the business of the company, insofar as it is necessary to complete the said contracts, for the purpose of meeting the payroll and securing additional material needed; each certificate to be in the denomination of $500 with interest thereon payable at the rate of 6 percent per annum, and the said certificates to be a first priority claim on all assets of the company, saving and excepting liens of record; and the said certificates shall be redeemed by the receivers at their option as cash payments are made upon the completion of said contracts." In pursuance of the foregoing order, the receivers sold to Harrisburg Trust Company certificates in the amount of $6,000, but were unable to sell the balance; the proceeds of those sold were used solely and entirely for the purposes as authorized in the said order. On December 13, 1929, upon petition the court entered an order directing the receivers to discontinue any further operations of the plant. On September 29, 1930, the receivers sold and conveyed all the real estate and tangible personal property then remaining unsold to a committee representing the holders of class A bonds of the company, at and for the sum of $25,000, subject to a mortgage of $200,000 securing the bonds aforesaid. The receivers on January 31, 1931, filed their account showing total charges of $40,305.36 and total credits in the same sum, leaving nothing for distribution, taking credit, however, for wage claims in the amount of $3,237.15; claim for compensation insurance of the State Workmen's Insurance Fund of $466.93; and $684.03 paid to the said Harrisburg Trust Company on account of the said $6,000 of receivers' certificates held by it. The said trust company filed exceptions to the account, to the effect that the accountants erred in crediting themselves with the said wage claims and the claim of the Workmen's Insurance Fund and contends that the said amounts should be paid to Harrisburg Trust Company on account of the said receivers' certificates. An auditor was appointed to pass upon the exceptions and to make distribution of the balance in the hands of the receivers who made report. Exceptions were filed to the auditor's report, to the effect that the auditor erred in not sustaining the first, second, third, and fourth exceptions filed by Harrisburg Trust Company to the said account and that he erred in certain of his conclusions of law.

The report of the auditor disclosed that the wage claims were not supported by proper and sufficient evidence, and the report was referred back to him to

take testimony and to make further report upon the said claims. A supplemental report was filed by the auditor, in which he rejected all the wage claims because of insufficient proof as required by law, and again allowed the claim of the State Workmen's Insurance Fund as a prior claim and in his schedule of distribution awarded the said fund to the said State Workmen's Insurance Fund. Upon the report being presented to the court, no exceptions having been filed, the court confirmed the same absolutely. Subsequently a petition was presented to the court by Harrisburg Trust Company to strike off the absolute confirmation of the report, insofar as it related to the allowance of the claim of the State Workmen's Insurance Fund in preference to the said certificates. Whereupon the absolute confirmation of the auditor's supplemental report was revoked and vacated insofar only as it related to the sum of $466.93 claimed by the said State Workmen's Insurance Fund.

The questions now before us on exceptions filed to the original and supplemental reports are: Is the claim of the said Workmen's Insurance Fund a preferred claim, and are the certificates preferred claims?

The Act of June 2, 1915, P. L. 762, is an act providing for the creation and administration of a state fund for the insurance of compensation for injuries to employes of subscribers thereto, etc., and in section 5 provides:

"On or before the first day of October in each year, the said Board shall prepare and publish a schedule of premiums or rates of insurance for employers who shall have accepted article three of the Workmen's Compensation Act of 1915, which schedule shall be printed and distributed free of charge to such employers as shall make application therefor; and any such employer may, at his option, as hereinafter provided, pay to the Fund the amount of the premium appropriate to his business or domestic affairs, and, upon payment thereof, shall thereafter be considered a subscriber to the Fund, and shall be insured as hereinafter provided for the calendar year for which such premium is paid; and such insurance shall cover all payments becoming due in any year because of accidents occurring during the year for which said premium is paid." Section 18, inter alia, provides: "Each subscriber to said Fund shall, within one month after his subscription has terminated, furnish a written statement, under oath or affirmation, to the said Board, setting forth the maximum average and minimum number of employes insured in the Fund that such subscriber had employed during the preceding year, and the actual amount of the money payroll of such employes for such year; . . . and, if the amount of the premium theretofore paid by such subscriber shall exceed the amount due according to such stated account, then the excess shall be forthwith refunded to the subscriber by payment out of the Fund in the manner hereinafter provided; and, if the amount shown by said statement exceed the amount of the premium theretofore paid by such subscriber, the excess shall be forthwith due and payable by the subscriber into the Fund, and until paid shall be a lien, as State taxes are a lien, upon the real and personal property of the subscriber; and, if unpaid, shall be collectible as State taxes are now collectible".

The claim of the State Workmen's Insurance Fund as shown by exhibits 4 and 5 is $466.93, and is for the payment of the remaining unpaid part of the premium beginning January 1, 1929, and ending November 30, 1929, the date of the appointment of the receivers. The auditor allowed this as a preferred claim on the theory that it was a lien as provided for in section 18 of the said act. With this we do not agree; it is in no wise an excess premium, for which alone the act provides a lien; it was a balance of a premium that should have

been paid at the beginning of the year 1929 as provided for by said section 5. It therefore has no preference.

Our second question is, do the receivers' certificates have a preference?

By the order and decree of the court authorizing the issuance of the said certificates, it was ordered and decreed that the same should be the first priority claim on all assets of the company saving and excepting liens of record. We are of the opinion that the court had, for the reasons given in the said petition for the issuance of the certificates, the authority to make such an order of priority. The thought of protecting the labor and materials already put in the incomplete contracts was the sole one in the minds of the receivers and the court. The authority given was solely for the protection and preservation of the particular unfinished property in the hands of the receivers. A greater sum of money had previously been expended upon the said contracts, the sum of $15,000 was to be raised by Harrisburg Trust Company, and certificates in the sum of $10,000 were alleged to be adequate to complete the contracts, thereby recovering the cost of materials and labor already expended upon them in the amount of $21,000 or more, and it was to the advantage of the creditors and stockholders of the company to complete the said unfinished contracts.

In 23 R. C. L. 95, sec. 104, it is said: "The power of a court of chancery to authorize the issuance of receivers' certificates that shall become paramount liens grows out of its duty to protect and preserve the property of the corporation in its hands; and hence, as a general rule, such certificates should not be issued except when necessary in order to preserve and protect the trust property." And at page 109, sec. 119, it is said: "The property becomes chargeable with the necessary expenses incurred taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court and not of the parties; and it is a right of the court essential to its own efficiency in the protection of things so situated to keep them under its control, until such expenses and allowances are paid or secured to be paid. . . . In addition to the above mentioned charges on property in the hands of a receiver which are conceded to have priority over other liens or incumbrances there is a sound equity which supports the doctrine that, when the nature of the property is such that the business to which it has been devoted cannot be discontinued without great probable loss, the court may authorize it to be continued by its officer and receiver, pending the closing up of the affairs of the insolvent corporation. Expenses incurred by a receiver under such circumstances may be justly said to be expenses of preservation for the benefit of bondholders or other persons entitled to share in the final distribution which ought to be first paid. The courts have also assumed to go still further and to adjudge priority of payment of debts contracted by a failing corporation within a few months prior to its adjudged insolvency for labor, supplies, and necessary current expenses incurred in the struggle to keep itself alive." In 1 Clark on the Law of Receivers, 633, 638-639, it is said: "The certificates are not debts of the company (which is in the hands of the receiver), but of the receiver backed by the pledged faith of the court that the property or the proceeds of which they are charged, is in its possession subject to be and that it will be disposed of by it for the payment of them. . . . The power to authorize the issuance of certificates is limited by and is coextensive with its obligation to conserve the property in its custody, and any expenditure of money that has not this primary purpose for its object is beyond the power of the court and unauthorized."

In the case of Lewis et al. v. Linden Steel Company, 183 Pa. 248, 252, the court said:

"The holders of the certificates issued by Mr. Warner had, undoubtedly, a preference to other creditors, as specified in his order of court, and if they had held on to those certificates, they would now have a preference."

In the case of Bauer et al. v. Wilkes-Barre Light Co., 274 Pa. 165, 169, it is said: "On the appointment of a receiver, the property placed in his care becomes charged with the necessary expenses incurred in taking care of and saving it. . . . 'Reasonable attorney's fees, like other expenses incurred by the receiver, are preferred claims, and take precedence over preëxisting liens' ". See 23 R. C. L. 106, sec. 116.

In the case of Mercantile Trust Co. v. Tennessee Cent. R. Co., 291 Fed. 462, 470, it is said: "In issuing receivers' certificates the court pledges its faith to the holders that it will enforce for their benefit the lien which it creates on the property for their benefit."

In the case of Bank of Commerce et al. v. Central Coal & Coke Co. et al., 115 Fed. 878, it was held that receivers' certificates are debts of the court and for this reason the duty is imposed upon the court to apply the property or its proceeds in its custody and control to the payment of the debts contracted by it in and about the management of the property; and further that judicial repudiation of obligations is not sanctioned under any circumstances, as one of the first duties of a Court of Justice is to compel delinquent debtors to pay their debts, and therefore it would be with poor grace if the court neglected to pay its own debts.

The case of Cox v. Snow, Receiver, et al., 47 Idaho 229, 273 Pac. 933, is one of the best we have read upon the subject, and at pages 234-235 it is said: "The question of whether a certain purpose is one of 'preservation' or something else is purely relative. Basically, everything a receiver does is for 'preservation.' The order appointing a receiver usually reads that he is appointed for the purpose of 'protecting and preserving the property.' Even where the receiver operates a railroad, he is preserving the property for the public, the creditors, or the stockholders. But where the courts make a distinction between 'preservation' of the property and the 'operation' of the property, preservation is usually used in a narrow sense, meaning the prevention of the destruction of the property."

The auditor and the attorney for the Workmen's Insurance Fund have cited a large number of cases, the decisions of which in effect are that the courts in a case of a private corporation in receivership cannot authorize the issuance of certificates which constitute a paramount lien on the corporation, so as to displace existing liens, without notice to such lienholders. There is no controversy about that proposition. The court very carefully in its order and decree protected existing liens of record, and none are discharged, postponed, or prejudiced as to lien by the said order and decree of this court.

Wherefore, we are of the opinion that the exceptions filed by Harrisburg Trust Company must be sustained and the auditor reversed, and the claims of the said receivers' certificates are liens as declared by the court in the order and are paramount to the claim of the said State Workmen's Insurance Fund, which is no lien. The said sum in controversy, viz, $466.93, should be awarded to Harrisburg Trust Company. In all other respects, the report should be approved and distribution be made accordingly.

And now, June 9, 1933, upon due consideration, the exceptions filed by Harrisburg Trust Company to the account, the auditor's report, and the auditor's sup-

plemental report are sustained, the auditor is reversed, and the claim of the Harrisburg Trust Company, holder of the said receivers' certificates, is adjudged paramount to the claim of the said State Workmen's Insurance Fund, and the said sum in controversy, to wit, $466.93, is ordered to be paid to the said Harrisburg Trust Company; otherwise the account and the auditor's report are confirmed.                                    From Homer L. Kreider, Harrisburg, Pa.